UNITED STATES of America,
Plaintiff-Appellee,

v.

Donnie Eugene HALBERT,
Defendant-Appellant.

No. 80–2148.

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted Nov. 19, 1981.

Decided Jan. 14, 1982.

Certiorari Denied April 19, 1982.
See 102 S.Ct. 1989.

Vernon E. Lewis, Asst. U. S. Atty., D. Kan., Kansas City, Kan. (Jim J. Marquez, U. S. Atty., with him on the brief), for plaintiff-appellee.

David J. Phillips, Asst. Federal Public Defender, D. Kan., Kansas City, Kan. (Leonard D. Munker, Federal Public Defender, Kansas City, Kan., with him on the brief), for defendant-appellant.

Before BARRETT, DOYLE and LOGAN, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

The defendant-appellant Halbert has appealed from a conviction of the crime of armed bank robbery, 18 U.S.C. §§ 2113(d) and 2. The cause was tried for two and one-half days, following which the jury returned a verdict of guilty. The defendant's post-trial motion for judgment of acquittal or new trial was denied and the trial court sentenced the defendant to 15 years in prison. This appeal followed.

I.

The robbery in question occurred on June 6, 1980. On that day the Ranchmart State Bank in Overland Park, Kansas, a bank which is insured by the Federal Deposit Insurance Corporation, was robbed of approximately $10,800.00. The actual armed robber was Dino Royal Cox. His two alleged confederates remained outside. There was testimony that a large, yellow car, similar to that owned by Halbert, one of the alleged outside men, was parked near the bank and was occupied by an unidentified white man at approximately the time of the robbery. Other testimony from a bank customer was that a red, four-door sedan departed rapidly from the area immediately after the robbery.

Gary Joel Green was the government's main witness in the case. He was a 1980 dental school graduate who, by his own admission, had participated in the robbery, but had turned state's evidence, and apparently as a result of this was granted immunity from prosecution. Green had previously met Halbert while he, Green, was participating in a dental program at the United States Penitentiary at Leavenworth. It appears that Halbert was then an inmate.

Green testified that on June 6th, the date of the robbery, he, Halbert and Cox had lunch together. On that occasion Halbert suggested that there be a bank robbery. In furtherance of that, the three drove in Halbert's car to purchase make-up and a mask. Testimony regarding the obtaining of the mask and make-up was corroborated by one Mitch Boyle of the Leavenworth, Kansas Police Department, who testified that a mask and make-up kit were found on July 7, 1980 in an apartment in which Dino Cox had been living. Also, employees of two stores in the area described by Green testified that their stores, in fact, carry the make-up kit and the mask which was later found in Cox's apartment.

Green then detailed the occurrences which took place after the mask and make-up kit had been purchased. They drove around the Ranchmart Bank several times. Green entered the bank and cashed a $100 bill. This entry was for the purpose of seeing how many employees were working. Around 1:30 p. m. they drove to Halbert's apartment. On the way they stopped to buy a hat. After arrival at Halbert's, Green went out to purchase coveralls.

Further testimony of Green was that the three men left Halbert's and returned to the area of the bank. Cox, the actual robber, and Halbert dropped Green at his car and proceeded in Halbert's car. Green continued to drive around the area. He observed Halbert's car parked beside the bank as he passed that location. Shortly thereafter he observed Halbert's vehicle get on the highway heading north. Green followed the vehicle in accordance with prior arrangements. They went to his residence. Once there, Cox produced two bags full of money, which they divided among them. Green testified that Cox was using a K. C. Fitness Gym bag which belonged to Halbert. Testimony established that Halbert was, indeed, a member of the K. C. Fitness Center. Following division of the money, Cox and Green left for the airport, and flew to separate places. Halbert stated that he was going to a lake in Missouri. There was testimony that on that day Halbert was intoxicated; but Green testified that at no time during the events of June 6th was Halbert intoxicated.

Other testimony which directly linked the defendants to the robbery was given by William Pinson, who was shown to have a bad criminal record, including a murder

conviction which was then being appealed. He testified that Halbert told him some time in June, 1980, that Cox had robbed the bank and that he, Halbert, had received $3,000.

Halbert's defense was based entirely on an alibi. Agent Parnell Miles of the Federal Bureau of Investigation testified that when Halbert was first questioned about the robbery he was advised that June 6th was a Friday and that the robbery had occurred at 3:00 p. m. Halbert responded that he was in a sales meeting at the time of the robbery. Halbert further indicated that his supervisor, John W. Wheaton, could verify the alibi.

Shortly thereafter, Mr. Wheaton, Halbert's employer, was questioned about the events of June 6th. The page for June 6th from Wheaton's desk calendar was missing. An appointment book led Wheaton to tell Agent Miles that he had left the office at 1:45 p. m. on June 6th.

Wheaton testified that he was the pre-need sales director at Forest Calvary Cemeteries in Kansas City, Missouri. Halbert worked for him as a salesman. He had started in February of 1980. Wheaton testified that it was not unusual for random pages to be missing from his desk calendar because he occasionally used the pages of past days for scrap paper. His further testimony was that after Halbert's arrest, he spent several days attempting to reconstruct the events of June 6th. As the result of his reconstructing efforts, Wheaton testified that Halbert was not at the June 6th sales meeting, but that he had spoken to Halbert on the telephone three times between 1:00 p. m. and 2:30 p. m. Wheaton and his wife had invited the Halberts to join them at the Wheaton's houseboat, at Lake of the Ozarks, for the week-end. They had planned to leave Friday afternoon around 2:00 p. m. As the result of his being delayed at work, Wheaton telephoned Halbert at his apartment to inform him of the delay. Around 2:00 p. m. Wheaton said he called Halbert again and told him that he was ready to leave the office. From this conversation Wheaton concluded that Halbert had been drinking and advised Halbert not to drive to the lake that day, but rather to wait until the following morning. At approximately 2:30 p. m., Wheaton testified, Halbert called him to clarify the directions to the houseboat. Halbert then agreed to wait until the following morning. Wheaton further testified that Halbert arrived at the lake late Saturday morning, June 7th.

Other testimony supported the alibi. Gary Mark Booth testified in favor of defendant. He stated that in May, 1980, he had contacted the defendant's wife, Donna, through an advertisement, and that she had made two shirts and had done some alterations for him. He was able to verify that on June 6th he had an appointment to pick up the sewing. He testified that he called the Halbert apartment to check on his clothes at 2:00 p. m. and once between 3:00 p. m. and 3:30 p. m., and he spoke to Halbert, as Mrs. Halbert was not available. At 4:00 p. m. Halbert answered the telephone and then put Mrs. Halbert on. At 5:00 p. m. Booth picked up the sewing at the Halbert apartment.

Mrs. Halbert corroborated the testimony of Booth and Wheaton as to going to the lake, etc. She said, however, that they did not go on June 6th; that the defendant went upstairs to take a nap and she went across the street to a neighbor's home. She returned at about 3:20 p. m., and then about 4:00 p. m., Booth called. On Saturday morning she went to the lake with Halbert.

The contentions which are advanced by Halbert here are: First, that the court erred in giving a ruling regarding the admissibility of his prior convictions if he were to take the witness stand. Second, that the trial court erred in denying his request for the identity of the government informant.

## II.

*Was error committed by the trial judge in expressing his viewpoint that the three former convictions of the defendant Halbert would probably be admissible if Halbert were to take the stand?*

Our conclusion is that prejudicial error was not committed.

Several weeks before the trial of the case, the appellant filed a motion *in limine* in which he requested that the court enter an order prohibiting the introduction by the prosecution of evidence of his prior convictions. The request extended to the government's case-in-chief, rebuttal and/or cross-examination of the defendant. Before the trial started the motion *in limine* was again raised, and at that time defense counsel stated:

"I would just, in reference still to the motion in limine, there was another part of that concerning the two prior convictions of my client [actually there were three convictions—one for mail fraud, one for false pretenses and one for armed robbery]. The armed robbery one, it is felt, that possibly the court should wait until he has more facts concerning that to see if that would be appropriate, and I don't know that the court has made a ruling on the mail fraud conviction yet, and I just wondered if the court is ready at this time to make ruling or desires to wait until later."

The court said, "I think we will wait until we get into the case." The defense counsel then said, "Could I ask that nothing about those two prior convictions be brought up until the court has been proffered more evidence and the court can make a ruling." Counsel for the government stated: "Naturally, we would follow the proper procedure in the nature of proffer before that is done." Defense counsel said, "Fine, that is all I ask."

After the government had rested its case, various motions were taken up outside the presence of the jury. The discussion surrounding the defendant's prior convictions was as follows: Defense counsel: "My client and I have not decided whether or not he is going to testify or not, but that would depend probably to a large extent on the court's ruling." The court and counsel had discussed the prior convictions and there was some confusion as to whether the motion *in limine* was designed to exclude all the prior convictions or the armed robbery only. But in any event the argument was made primarily with respect to the armed robbery conviction. The court did not make a positive ruling on any of the convictions. The judge said that he would wait until they got into the case. The counsel for the government agreed that a proffer would be made before anything was said about them.

Following the completion of the government's case, counsel met with the court in chambers. At that time defense counsel said that his client had not decided whether he was going to testify or not; that it would depend to a large extent on the court's ruling on the convictions (court and counsel discussed two prior convictions, one for mail fraud, and one for false pretenses). The discussion continued to the effect that defense counsel did not believe that the mail fraud was the type of conviction that should be permitted under 609(b) of the Rules of Evidence. Objections were made by defense counsel to the false pretense and mail fraud convictions, and also the conviction for aggravated robbery. Arguments were presented as to whether or not under 609(b) these prior convictions were admissible, and there was mention of the balancing test set forth in 609(b) as to whether these prior convictions had a prejudicial effect which outweighed the probative value to be derived from testing the credibility of the witness.

The court stated that it would have little or no difficulty in making a finding that the probative value of the evidence on cross-examination of the defendant as affecting his credibility would far outweigh any prejudicial effect, so the evidence of prior convictions would more than likely be received. Defense counsel asked whether that included aggravated robbery, and the court said, "Yes, sir. That would be the first one. If there is any question, it would be the others."

Thereafter, Halbert presented his alibi defense through the testimony of Wheaton, Booth and Mrs. Halbert. Halbert himself did not take the witness stand. Counsel for Halbert sought to have the trial court rule that the defendant was entitled to a ruling regarding the admissibility of prior convic-

tions before he took the stand. In any event, Halbert's attorney urged the court to find that the trial court's statement was a ruling. Finally he argued that the court committed reversible error in ruling Halbert's prior armed robbery conviction admissible in the event he chose to testify. The government takes the position that the admissibility under Rule 609 has not been preserved for review on appeal. Alternatively the United States Attorney takes the position that the trial court made the correct finding, in any event.

Rule 609 of the Rules of Evidence provides that for the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination, but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant, or (2) involved dishonesty or false statement, regardless of the punishment.

· As noted before we have indicated some doubt as to the existence of a reviewable ruling. There certainly was a great deal of talk about this, and the judge expressed his viewpoint as to what the law was, at least, and as to how he was likely to rule if the issue came before him. At no time, however, did the defendant state definitely that he intended to take the witness stand, and that his taking the witness stand depended wholly and entirely upon the court's ruling. Although it did remain a question, nevertheless there was a good deal of discussion of the problem and thus, we consider it proper to present our view based upon the record as made.

We have approved the idea that where the question of admissibility arises under Rule 609 there ought to be a proceeding outside the presence of the jury before any mention of prior convictions is made in the presence of the jury. *United States v. Wolf*, 561 F.2d 1376, 1382 (10th Cir. 1977). *See* Rule 103(c), Federal Rules of Evidence.

This is an area in which the trial judge has a good deal of discretion and certainly the procedure should be subject to the trial court's discretion, at least to an extent.

There is one case which holds that the defendant may be able to have a 609 ruling before trial. *United States v. Fountain*, 642 F.2d 1083, 1087 (7th Cir. 1981), *cert. denied*, 451 U.S. 993, 101 S.Ct. 2335, 68 L.Ed.2d 854 (1981). A number of courts have indicated that while advance ruling may be desirable in many cases, the question of timing may be a discretionary matter. *United States v. Oakes*, 565 F.2d 170 (1st Cir. 1977); *United States v. Cook*, 608 F.2d 1175, 1186 (9th Cir. 1979), *cert. denied*, 444 U.S. 1034, 100 S.Ct. 706, 62 L.Ed.2d 670 (1980); *United States v. Mahone*, 537 F.2d 922 (7th Cir. 1976), *cert. denied*, 429 U.S. 1025, 97 S.Ct. 646, 50 L.Ed.2d 627. Other courts have suggested that the practice should be postponement of the ruling until after the defendant testifies. *United States v. Hickey*, 596 F.2d 1082 (1st Cir. 1979), *cert. denied*, 444 U.S. 853, 100 S.Ct. 107, 62 L.Ed.2d 70 (1980). There is a good deal to be said for postponing the ruling until the matter becomes a reality. But to wait until after the testimony is given is to act too late for the defendant to make a decision based on the court's determination as to admissibility. The best approach might be to postpone it until the time of testimony and if the defendant states positively that he intends to take the stand only if the court rules in his favor, that is, if the former convictions are ruled inadmissible for the purpose of discrediting or impeaching his testimony, then the judge would be in a position to make an appealable ruling. It seems desirable, however, that the condition should not be such that the defendant will be allowed to manipulate the court so as to create a legal question notwithstanding that he has no genuine intention to testify.

In *McGautha v. California*, 402 U.S. 183, 91 S.Ct. 1454, 28 L.Ed.2d 711 (1971), the Supreme Court said:

It has long been held that a defendant who takes the stand in his own behalf cannot then claim the privilege against

cross-examination on matters reasonably related to the subject matter of his direct examination (citations omitted). It is not thought overly harsh in such situations to require that the determination whether to waive the privilege takes into account the matters which may be brought out on cross-examination. It is also generally recognized that a defendant who takes the stand in his own behalf may be impeached by proof of prior convictions or the like (citations omitted). Again, it is not thought inconsistent with the enlightened administration of criminal justice to require the defendant to weigh such pros and cons in deciding whether to testify.

402 U.S. at 215, 91 S.Ct. at 1471.

Rule 609 makes some changes in the doctrine expressed in *McGautha*, but the proposition regarding the timing of rulings on the admissibility of prior convictions has not been changed. From a reading of the *McGautha* case and others on exemptions from examination under Rule 609, it is our view that a ruling and not a possible ruling should be the order of the day. In *United States v. Cobb*, 588 F.2d 607 (8th Cir. 1978), *cert. denied*, 440 U.S. 947, 99 S.Ct. 1426, 59 L.Ed.2d 636 (1979), the Eighth Circuit indicated that an advance ruling is tentative and dependent upon the defendant taking the stand. And in *United States v. Cook, supra*, the Ninth Circuit, *en banc*, with five dissenting judges, held that an advance ruling was proper. This is a fully reasoned opinion which we find persuasive.

■ It goes without saying that an advance ruling runs the risk of being a hypothetical one, and also, it is very difficult for a trial judge to make an evaluation without having heard the defendant's testimony. Nevertheless, most of the courts which have had to deal with this problem have held that the advance rulings are reviewable. *United States v. Smith*, 551 F.2d 348 (D.C. Cir.1976); *United States v. Jackson*, 627 F.2d 1198 (D.C.Cir.1980); *United States v. Provenzano*, 620 F.2d 985 (3d Cir. 1980), *cert. denied*, 449 U.S. 899, 101 S.Ct. 267, 66 L.Ed.2d 129; *United States v. Fountain,*

*supra; United States v. Hickey, supra; United States v. Langston*, 576 F.2d 1138 (5th Cir. 1978), *cert. denied*, 439 U.S. 932, 99 S.Ct. 324, 58 L.Ed.2d 327; *United States v. Cook, supra; United States v. Portillo*, 633 F.2d 1313 (9th Cir. 1980), *cert. denied sub nom. Montellano v. United States*, 450 U.S. 1043, 101 S.Ct. 1763, 68 L.Ed.2d 241 (1981). *Cf., New Jersey v. Portash*, 440 U.S. 450, 99 S.Ct. 1292, 59 L.Ed.2d 501 (1979) (review of advance ruling regarding admissibility of grand jury testimony where question was ruled on by State Supreme Court). Most of these courts require that certain steps be taken to minimize the problems. For example, the defense counsel must outline the intended testimony so as to provide the appellate court a basis for determining whether or not the admission of such convictions was erroneous under Rule 609. See *United States v. Hendershot*, 614 F.2d 648 (9th Cir. 1980); *United States v. Fountain, supra*. Our disposition is to rule that provided the defendant expresses himself in positive terms as to taking the witness stand, if the convictions are ruled out, an advance ruling can be made. Also, of course, there should be a positive ruling by the court.

■ In the case before us the trial court gave a more or less positive statement as to what he thought the ruling would be, and from a weighing of the evidence in accordance with Rule 609, he concluded that the probative value of the evidence outweighed its prejudicial effect to the defendant. He did not expound in detail his reasoning or the factors that he considered, but undoubtedly he took into account the fact that the defendant was going to rely on an alibi and thus his credibility would be directly presented for the jury's consideration. And it would appear from the statement of the judge that he did take into account the probative value of the evidence as opposed to the prejudicial effect which the defendant would suffer.

Of course, it is obvious that prejudice is always present when meaningful evidence is introduced against the defendant. What the weighing calls for is elimination or

avoidance of an emotional reaction not based on reason. Here there is certainly room for the judge to arrive at the conclusion he reached. First of all, the convictions were not unrelated to truthfulness. The convictions of mail fraud and false pretenses were directly relevant, and as for the conviction of aggravated robbery, while truthfulness is not an element it surely casts doubt on the robber's regard for the truth. Truthfulness is unlikely to exist by itself and in a vacuum. It is a quality which a generally upstanding person is likely to have. It is improbable that one who undertakes to rob a bank with a gun will prove to be a person of high character who is devoted to truth. We conclude that the trial court could have reasonably determined that the probative value to be derived from the evidence outweighed any prejudice that might flow from it.

The courts have given considerable deference to the rulings of trial courts, particularly where the courts have engaged in the weighing process which is prescribed by Rule 609. See *United States v. Cook, supra; United States v. Portillo, supra; United States v. Webster*, 522 F.2d 384 (8th Cir. 1975); *United States v. Fountain, supra; United States v. Langston, supra.* In the case before us the trial court found, in light of defendant's proposed alibi testimony, that the probative value outweighed the prejudicial effect of the conviction.

Some further comments must be made on the issue of prejudice. The jury had been advised of the fact that the defendant had been in the United States Penitentiary at Leavenworth. The testimony of the witness Green established that fact. It is true that the jury did not become aware of the fact that the conviction was for robbery, but the jury did know that he was in the penitentiary for something.

We consider the fact that the defendant was not impeded from offering evidence of alibi by virtue of the trial court's ruling. Three witnesses gave a detailed account of his activities on the afternoon of June 6th. The most that the defendant could have done would have been to corroborate the testimony of these witnesses. It is doubtful whether he would have made a meaningful contribution.

It is our conclusion that the case is not one which calls for reversal.

### III.

*Did the trial court err in denying the pretrial motion of the defendant which sought disclosure of a confidential informant?*

The motion just mentioned was denied at the pretrial hearing, but was renewed by the defendant following presentation of the government's case-in-chief. Again the trial court denied the motion.

Counsel for the government indicated that the informant had contacted an F.B.I. agent who was not working on the Ranchmart Bank case. He related to the agent that Cox was involved in the Ranchmart State Bank robbery and it was somewhat of a hearsay setting. The informant had heard it on the streets and communicated it to the agent, and they proceeded on it as an investigative lead. The tip led to investigation of Cox and Green. It was not until Green was interviewed that Halbert became implicated. The defendant urged that disclosure should be required because the fact the informant did not mention Halbert as well as Cox was exculpatory.

Reliance by the defendant is on *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). There the Supreme Court ruled that error had been committed by failure to require disclosure of an informant's identity. But in that case, the informant was the sole participant, other than the defendant, in the criminal transaction. The informant had helped to arrange the criminal transaction and had played a prominent role. Under such circumstances the Supreme Court found disclosure to be required. At the same time the Court recognized that no fixed rule regarding disclosure exists. The defendant's right to prepare a defense must be balanced against the public interest in protecting the flow of information to law enforcement officials.

**496**

*Id.* at 62, 77 S.Ct. at 628; *United States v. Dyba,* 554 F.2d 417 (10th Cir. 1977), *cert. denied,* 434 U.S. 830, 98 S.Ct. 111, 54 L.Ed.2d 89.

█ Several courts applying the *Roviaro* standard, including this court, have held that disclosure is not required where the informant is not a participant in or a witness to the crime charged. *United States v. Perez-Gomez,* 638 F.2d 215, 218 (10th Cir. 1981); *United States v. House,* 604 F.2d 1135 (8th Cir. 1979), *cert. denied,* 445 U.S. 931, 100 S.Ct. 1320, 63 L.Ed.2d 764 (1980). *See also United States v. Wilks,* 629 F.2d 669 (10th Cir. 1980). The statement of counsel for the government indicated that the "informant" in this case was neither a participant nor a witness to the robbery. Rather, by way of hearsay upon hearsay, the informant had heard of Cox's involvement in the robbery. Disclosure was certainly not required by *Roviaro.*

We recognize that disclosure may be necessary where the informant may give testimony which is helpful to the defense. However, speculation regarding what an informant might possibly testify to is not sufficient to require disclosure. *United States v. Buras,* 633 F.2d 1356 (9th Cir. 1980); *United States v. Gonzales,* 606 F.2d 70 (5th Cir. 1979). In the present case the fact that the informant had apparently not heard that Halbert was involved in the robbery had little or no exculpatory value; the informant was not an eyewitness, and had learned about Cox's involvement through gossip. The defendant was able to proceed with his alibi defense through these other witnesses who claimed to have first-hand knowledge of relevant events. We see no error in the trial court's refusal to require disclosure of the informant in this case. *United States v. Sherman,* 576 F.2d 292 (10th Cir. 1978); *cert. denied sub nom. Cerase v. United States,* 439 U.S. 913, 99 S.Ct. 284, 58 L.Ed.2d 259; *United States v. Buras, supra; Suarez v. United States,* 582 F.2d 1007 (5th Cir. 1978).

The judgment of the trial court should be, and it is hereby affirmed.