**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Loretta BURRELL, Defendant-Appellant.**

**No. 82–1652.**

United States Court of Appeals,
Tenth Circuit.

Nov. 4, 1983.

---

Jeffrey R. Edelman, Denver, Colo., for defendant-appellant.

Charles H. Torres, Asst. U.S. Atty., Denver, Colo. (Robert N. Miller, U.S. Atty., Denver, Colo., was also on brief), for plaintiff-appellee.

Before HOLLOWAY, BARRETT and LOGAN, Circuit Judges.

HOLLOWAY, Circuit Judge.

Defendant Loretta Burrell was convicted, after a jury trial, on four counts of unlawful acquisition and possession of food stamps in violation of 7 U.S.C. § 2024(b).[1] Defendant appeals her conviction on four grounds, arguing that (1) the trial judge improperly denied her motion to sever Counts I and III of the indictment from Counts II and IV; (2) the purchase of food stamps from an undercover agent of the United States Department of Agriculture is not an unauthorized transaction under § 2024(b); (3) the Government unconstitutionally singled her out for prosecution; and (4) the conduct of the Government

agents investigating her was so outrageous as to violate the Due Process Clause of the Fifth Amendment. We disagree with all four of defendant's contentions and affirm.

### I

One of the duties of the Inspector General's Office of the United States Department of Agriculture (USDA) is to detect and prevent fraud, waste and abuse within the food stamp program. In the course of an investigation begun in January 1981, the USDA learned that Burrell's Variety Seafood Store, located at 730 East 22nd Street in Denver, Colorado, was a possible site of illegal food stamp trafficking. The USDA received this information from a confidential informant of the Denver Police Department and through examination of the high redemption rate of food stamps at the store. I R. 20.

Acting on this information, Agent Jennifer Satre of the Inspector General's Office (the agent) went to the store in an undercover capacity on four separate days in March 1981. On each occasion, the agent sold food stamps, in amounts ranging from $195 to $390, for cash at the rate of 50¢ for each $1 in food stamps, to one or both of the owners of the store, defendant and her husband, Charles Burrell. In two of the transactions, the subjects of Counts I and III of the indictment, defendant purchased the food stamps while Mr. Burrell was not in the store. On the other two occasions, the subjects of Counts II and IV, Mr. Burrell was present during the transactions.

Defendant moved to sever Counts I and III from Counts II and IV under Fed.R. Crim.P. 14, to compel the Government to disclose the identity of the confidential informant[2] and to dismiss on the ground of selective prosecution. Id. at 6–7. The trial judge denied the motions.[3]

In the trial[4] before the jury, the Government called the agent as a witness.[5] She

---

1. Defendant received a sentence of five years' probation and a $2,500 fine. I R. 43–44.

2. Defendant withdrew her motion for a trial separate from that of her husband after he entered a plea to a misdemeanor. II R. 3–4; I R. 19, 25.

3. In response to the trial judge's request, I R. 19, Agent Satre filed an affidavit setting forth

the factual background of the USDA's investigation into illegal food stamp trafficking in the Denver area and the role of the confidential informant in defendant's case. Id. at 20–22.

4. In response to defendant's motions before trial, id. at 23–28, the district court ruled that

testified that she was involved in an undercover investigation into illegal food stamp trafficking during March 1981. In the course of this investigation, she visited Burrell's Variety Seafood Store on four separate occasions in an undercover capacity. On March 2, the agent waited outside the store while a confidential informant went inside to determine if the individuals who previously had indicated an interest in purchasing food stamps were there. When the informant waved to the agent, she went into the store and met with defendant. After the informant introduced the agent to defendant, the informant went to another area of the store. *Id.* at 62–63. The agent asked defendant how many food stamps defendant could "handle." *Id.* at 65. After further discussion, defendant purchased $195 in food stamps for $97. *Id.* at 65–67. The agent informed defendant that the agent would have more food stamps available in the future. Defendant indicated that she would be interested in further purchases. *Id.* at 67.

The agent returned to the store on March 12 and met with defendant, who left the store and returned with her husband, Mr. Burrell. When the agent offered to sell Mr. Burrell $325 in food stamps, he replied that he only had $90. Defendant told Mr. Burrell to use money she had just given him to pay for the food stamps. Mr. Burrell then purchased $260 in food stamps for $120. Mr. Burrell indicated that he would be interested in purchasing another $260 in food stamps from the agent. The agent agreed to return to the store on March 16. *Id.* at 71–73.

When the agent visited the store on March 16, defendant informed the agent that Mr. Burrell had just left. Defendant gave the agent $200 under the mistaken belief that the agent had brought $400 in food stamps to sell. When the agent informed defendant that she only had $260 in food stamps to sell, defendant purchased them for $150. Defendant requested that the agent return with $400 in food stamps at a later date, because defendant claimed that she knew someone who could move the stamps for her and her husband. *Id.* at 76–77.

The agent returned on March 19 and offered Mr. Burrell $390 in food stamps. When Mr. Burrell hesitated because he was unsure whether he had enough money, defendant told him to take $20 from the store's cash register. Mr. Burrell did this and purchased the food stamps for $195. *Id.* at 78–79.

The Government rested its case after the agent finished her testimony. Defendant moved for dismissal on the grounds that the Government had failed to prove a violation of § 2024(b) and that the agent's conduct in the transaction violated due process. *Id.* at 99–103. The trial judge denied the motions. *Id.* at 104.

Defendant called Mr. Burrell as a witness. He testified that although defendant was in the store during his meetings with the agent on March 12 and 19, defendant did not participate in either transaction. *Id.* at 110–19; 122–27. Defendant then took the stand in her defense. She admitted purchasing the food stamps on March 2 and March 16 but denied that she participated in the March 12 and March 19 transactions. *Id.* at 129–44. Defendant then rested.

After the jury was recessed, defendant moved for acquittal on Counts I and III on two grounds, (1) that no crime was committed because the agent was authorized to sell the food stamps; and (2) that the evidence supported, as a matter of law, a finding of

the Government not be permitted to cross examine Charles Burrell on confidential marital communications with defendant; that Counts I and III of the indictment not be severed from Counts II and IV; and that the Government not be limited to Counts I and III in cross-examining defendant. *Id.* at 29.

**5.** The Government first called William M. Oches, officer in charge of the Lakewood, Colorado, Field Office of the USDA Food and Nutrition Service, as a witness. He testified as to the operation of the food stamp program and to the procedure through which Burrell's Variety Seafood Store participated as a retail food store authorized to receive food stamps from eligible households in exchange for food. *Id.* at 41–58.

entrapment or outrageous governmental conduct. The trial judge denied defendant's motions. The jury found defendant guilty on all four counts.

## II

### *Severance*

Counts I and III of the indictment charged defendant with acquiring and possessing food stamps in violation of 7 U.S.C. § 2024(b). Counts II and IV charged defendant and Charles Burrell with violating § 2024(b) and 18 U.S.C. § 2 (aiding and abetting). Defendant argues that the trial court's refusal to sever Counts I and III from Counts II and IV constitutes "strong or substantial prejudice" requiring reversal. Brief of Appellant at 6. We disagree.

▮▮▮ The grant or denial of severance under Fed.R.Crim.P. 14 lies within the sound discretion of the trial judge. *See, e.g., Opper v. United States,* 348 U.S. 84, 95, 75 S.Ct. 158, 165, 99 L.Ed. 101 (1954); *United States v. Neal,* 692 F.2d 1296, 1305 (10th Cir.1982). We will not intervene unless defendant demonstrates an abuse of discretion. *See, e.g., Neal, supra,* 692 F.2d at 1305; *United States v. Van Scoy,* 482 F.2d 347, 349 (10th Cir.1973). The defendant bears a heavy burden of showing real prejudice to his case. *Cf. United States v. Dill,* 693 F.2d 1012, 1014 n. 2 (10th Cir.1982); *United States v. Strand,* 617 F.2d 571, 575 (10th Cir.), *cert. denied,* 449 U.S. 841, 101 S.Ct. 120, 66 L.Ed.2d 48 (1980). *See generally* 1 C. Wright, *Federal Practice and Procedure* § 222, at 776 (2d ed. 1982) ("In most cases motions to try different counts separately have been denied.").

▮▮▮ Defendant attempts to demonstrate real prejudice in two ways. First, she contends that "the jury cumulated the evidence of the four crimes charged and found her guilty, when severance would have yielded a separate result." Brief of Appellant at 6. We recently noted that "[f]or prejudice resulting from denial of a severance motion to justify reversal, the defendant must show more than just a better chance of acquittal at separate trials." *Neal, supra,* 692 F.2d at 1305. *See also United States v. Dennis,* 625 F.2d 782, 802 (8th Cir.1980).

Thus, this argument does not justify reversal of the trial judge's denial of the severance motion. *Cf. Johnson v. United States,* 356 F.2d 680, 682 (8th Cir.), *cert. denied,* 385 U.S. 857, 87 S.Ct. 105, 17 L.Ed.2d 84 (1966) ("Weighing the danger of confusion and undue cumulative inference is a matter for the trial judge within his sound discretion.").

▮▮▮ Second, defendant argues that her use of the entrapment defense to Counts I and III, thereby admitting guilt to those offenses, unduly prejudiced her defense of nonparticipation to Counts II and IV, where her husband also was charged. Brief of Appellant at 6. Defendant does not direct us to any authority to support her contention. In analogous cases where codefendants rely on different defenses, severance is not required unless the defendant proves that the defenses are so antagonistic that they are mutually exclusive. *See e.g., United States v. Mulherin,* 710 F.2d 731, 736 (11th Cir.1983); *United States v. Banks,* 687 F.2d 967, 973 (7th Cir.1982), *cert. denied,* — U.S. —, 103 S.Ct. 1208, 75 L.Ed.2d 448 (1983); *United States v. Calabrese,* 645 F.2d 1379, 1384 (10th Cir.), *cert. denied,* 451 U.S. 1018, 101 S.Ct. 3008, 69 L.Ed.2d 390 *cert. denied,* 454 U.S. 831, 102 S.Ct. 127, 70 L.Ed.2d 108 (1981); *United States v. Roberts,* 583 F.2d 1173, 1177 (10th Cir.1978), *cert. denied,* 439 U.S. 1080, 99 S.Ct. 862, 59 L.Ed.2d 49 (1979). Courts have concluded that "when one defendant denies participation in an offense while another claims entrapment and admits participation, the defenses are not antagonistic," and therefore severance is not required. Dawson, *Joint Trials of Defendants in Criminal Cases: An Analysis of Efficiencies and Prejudices,* 77 Mich.L.Rev. 1379, 1424 (1979). *See also United States v. Garza,* 563 F.2d 1164, 1166 (5th Cir.1977), *cert. denied,* 434 U.S. 1077, 98 S.Ct. 1268, 55 L.Ed.2d 783 (1978) ("The inconsistency between the entrapment defense and the non-participation defense, did not, in this case, necessitate severance."); *United States v. Morrow,* 537 F.2d 120, 138 (5th Cir.1976), *cert. denied,* 430 U.S. 956, 97 S.Ct. 1602, 51 L.Ed.2d 806 (1977); *cf. United States v. Moschiano,* 695 F.2d 236, 245–47 (7th Cir.1982) (entrapment and with-

drawal defenses); *United States v. Riola,* 694 F.2d 670, 671–73 (11th Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 1532, 75 L.Ed.2d 953 (1983) (entrapment and coercion defenses); *United States v. Murzyn,* 631 F.2d 525, 535 (7th Cir.1980), *cert. denied,* 450 U.S. 923, 101 S.Ct. 1373, 67 L.Ed.2d 351 (1981) (entrapment and mistaken identity defenses); *United States v. Lentz,* 624 F.2d 1280, 1290 (5th Cir.1980), *cert. denied,* 450 U.S. 995, 101 S.Ct. 1696, 68 L.Ed.2d 194 (1981) ("The fact that [defendant] had a traditional entrapment defense, while [co-defendant] did not, is not a ground for severance.").

In *United States v. Cervantes,* 609 F.2d 974 (10th Cir.1979), *cert. denied,* 444 U.S. 1023, 100 S.Ct. 684, 62 L.Ed.2d 656 (1980), a husband and wife were jointly indicted, tried and convicted on four counts of knowingly making and using counterfeit immigration documents in violation of 18 U.S.C. § 1001. Both were also charged with aiding and abetting under 18 U.S.C. § 2. An undercover Government agent testified that he purchased the four spurious immigration documents from the defendants for $295. The trial court denied a request for severance based on the defendants' allegedly antagonistic defenses. At trial, the husband contended that he was entrapped when he sold the counterfeit documents. The wife argued that she was merely present when her husband made the sale and that she did not participate in the transaction. We held that these defenses were not sufficiently antagonistic to justify reversing the trial judge's discretionary denial of the severance motion. *Id.* at 976.

The degree of antagonism of the defenses here is more severe than in the codefendant cases; the same defendant admitted guilt but claimed entrapment as to Counts I and III while denying guilt as to Counts II and IV. Although different transactions are involved and theoretically the defendant could have acted differently in each instance, because of the close relationship in time, the defendant's contrasts in testimony would create a serious risk of disbelief and rejection by the jury. Rule 14 does provide that the court may grant a severance if it appears that a defendant or the Government "is prejudiced by a joinder of offenses or of defendants." However, the rule speaks of relief by requiring a Government election, by separate trial of counts, by severance of defendants, or by "whatever other relief justice requires." We are not persuaded that in such a case justice requires severance so that the defendant can take such positions without the jury being aware of the differences in defendant's testimony on these similar transactions which were closely related in time.[6] *See United States v. Eades,* 615 F.2d 617, 624 (4th Cir.), *adopted in pertinent part,* 633 F.2d 1075, 1078 (4th Cir.1980) (en banc), *cert. denied,* 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1981) (defendant not entitled to severance because he offered an alibi defense as to one event and not the other, and wished to testify as to one event without risking cross-examination as to the other).

We therefore hold that defendant's use of an entrapment defense to Counts I and III did not so prejudice her use of a nonparticipation defense to Counts II and IV as to justify reversing the trial judge's denial of the severance motion as an abuse of discretion.

## III

*Transactions proscribed by § 2024(b)*

Defendant argues that her acquisition and possession of food stamps is lawful because she purchased them from a USDA agent who was authorized to make such use of the stamps. We find this contention to be without merit.

Defendant cites 7 C.F.R. § 278.5(e) to support her position. Section 278.5(e) permits authorized investigators to use food stamps in order to ferret out fraud, waste and abuse in the food stamp program.[7] It

---

**6.** There is no claim of misjoinder of the counts and we are satisfied they were properly joined since the offenses charged were of the same or similar character. *See* Fed.R.Crim.P. 8.

**7.** The regulation, in pertinent part, provides:

Regardless of any other provision in these regulations, coupons may be issued to, purchased by, or redeemed by persons authorized by [the USDA Food and Nutrition Service (FNS)] to use those coupons in examining

does not, as defendant maintains, authorize the public to purchase food stamps from an undercover agent.

Defendant's argument is contrary to the statutory scheme. We agree with the Fourth Circuit's rejection of a similar contention:

> [D]efendant argue[s] that because the undercover agent who sold him the food stamps was authorized to dispense them, the defendant's acquisition and possession of the food stamps was likewise authorized. . . . We find [this] argument totally without merit . . . . In 7 U.S.C. § 2024(a), Congress authorized the issuance or presentment of food stamps for enforcement purposes. In 7 U.S.C. § 2024(b), Congress made the unauthorized acquisition of food stamps a crime. Obviously, Congress did not intend to exempt from criminal penalties anyone who acquired food stamps from an undercover agent. The fact that a seller is authorized to sell does not mean that the buyer must necessarily be cloaked with authority to buy.

*United States v. Stencil,* 629 F.2d 984, 984–85 (4th Cir.1980). *See also United States v. French,* 683 F.2d 1189, 1194–95 (8th Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 304, 74 L.Ed.2d 284 (1982).

## IV

### Selective prosecution

■■■■ Defendant contends that she was singled out for prosecution in violation of the equal protection component of the Due Process Clause of the Fifth Amendment. Defendant was a target in the same investigation as the defendant in *United States v. Salazar,* 720 F.2d 1482 (10th Cir.1983), which we also decide today. Defendant makes the same arguments to support her claim of selective prosecution as were made by the defendant in *Salazar.* For the reasons expressed in our opinion in *Salazar,* 720 F.2d at 1487, we hold that defendant has failed to demonstrate a violation of equal protection principles.[8]

## V

### Outrageous governmental conduct

■■■■ Defendant argues that the conduct of the investigating agent was so outrageous as to be fundamentally unfair and shocking, in violation of the Due Process Clause of the Fifth Amendment. The agent's conduct here is similar to that which in *Salazar* we held to be within constitutional limits. For the reasons expressed in *Salazar,* 720 F.2d at 1488,

and inspecting program operations, and for other purposes determined by FNS to be required for proper administration of the program.

7 C.F.R. § 278.5(e).

**8.** We also find no merit in defendant's contention that the refusal to disclose the identity of the confidential informant prejudiced her selective prosecution defense. The informant did not furnish the probable cause for prosecution, witness any of the transactions that were the subject of the four counts in the indictment, or testify at trial. The informant merely provided the initial introduction of the agent to defendant. In these circumstances, it is not improper to protect "the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." *Roviaro v. United States,* 353 U.S. 53, 59, 77 S.Ct. 623, 627, 1 L.Ed.2d 639 (1957).

Disclosure is not required where the informant is not a participant in, or witness to, the crime charged. *See, e.g., United States v. Halbert,* 668 F.2d 489, 496 (10th Cir.), *cert. denied,*

456 U.S. 934, 102 S.Ct. 1989, 72 L.Ed.2d 453 (1982); *United States v. Perez-Gomez,* 638 F.2d 215, 218 (10th Cir.1981). *See also United States v. DeAngelis,* 490 F.2d 1004, 1010 (2d Cir.), *cert. denied,* 416 U.S. 956, 94 S.Ct. 970, 40 L.Ed.2d 306 (1974) (Government need not disclose identity of informant not "an intricate part" of undercover purchase of illegal narcotics, who was "mere introducer" and never participated in the sales). Moreover, defendant does not adequately explain how disclosure of the identity of the informant would be "relevant and helpful" to her selective prosecution defense. *Roviaro, supra,* 353 U.S. at 60, 77 S.Ct. at 627. Mere "speculation regarding what an informant might possibly testify to is not sufficient to require disclosure." *Halbert, supra,* 668 F.2d at 496. *Cf. Gaines v. Hess,* 662 F.2d 1364, 1367–68 (10th Cir.1981) (court ordered *in camera* hearing to determine whether informant, the only witness to sale of narcotics other than undercover agent and defendant, could corroborate defendant's defense that he was not the person who sold narcotics to the agent). We hold that the trial judge did not err in not requiring disclosure in the present case.

we hold that defendant has not established a due process violation. We likewise hold, as in *Salazar*, that there was no error in refusing to submit this due process issue to the jury since it was a question for the court to determine.

## VI

We conclude that there was no error with respect to any of the issues raised on appeal. Accordingly, the judgment is

AFFIRMED.