UNITED STATES of America, Plaintiff,

v.

Donald DIGGS, Defendant.

Crim. A. No. 91–10126–01.

United States District Court,
D. Kansas.

July 10, 1992.

D. Blair Watson, Asst. U.S. Atty., Wichita, Kan., for plaintiff.

Stephen E. Robison, Wichita, Kan., for defendant.

## MEMORANDUM AND ORDER

BELOT, District Judge.

This matter is before the court on the pretrial motions of defendant. Three motions are pending: (1) motion to suppress statement; (2) motion to sever counts; and (3) motion for discovery materials. The court held hearings on the motions on June 5 and 22, 1992. The court has considered the evidence and the parties' briefs and is prepared to rule.

Defendant is charged in a two count indictment. Count I charges possession of cocaine with intent to sell arising from an arrest on November 25, 1991. Count II charges the same, but arises from an earlier arrest on June 18, 1991. The incidents are unrelated.

Count II of the indictment relates to an undercover operation that led to defendant's arrest in the early morning hours of June 18, 1991. Defendant came to be associated with a residence at 2320 White Oak in Wichita, at which address a package containing cocaine was to be delivered. The police observed defendant emerging from this residence with the package and then getting into a car. The police followed the car, pulled it over, and arrested defendant and a companion. Defendant was interviewed by postal inspector Fluekiger, but no charges were brought at that time.

Count I of the indictment relates to defendant's subsequent arrest on November 25, 1991. The reports furnished to defendant's counsel indicate that on that date, an informant attempted to sell a quantity of cocaine to defendant. When defendant replied that he did not have money to buy drugs, the informant gave the cocaine to defendant without payment. Defendant was arrested within minutes after receiving possession of the cocaine.

## I. *Suppression of Statement* (Doc. 27)

Defendant moves to suppress incriminating statements that he made after his November arrest on the ground that he was intoxicated on cocaine at the time he gave it. Because he was under the influence of drugs at the time he waived his *Miranda* rights and made incriminating statements to the police, defendant contends that his confession was involuntary and thus subject to suppression.

The government argues that defendant's statements cannot be deemed involuntary, because defendant has made no showing relating his alleged cocaine intoxication to police action.

In order to establish that a confession or a waiver of *Miranda* rights was "involuntary" in the constitutional sense, there must also be a showing of "coercive police activity." *Colorado v. Connelly*, 479 U.S. 157, 163–67, 107 S.Ct. 515, 519–22, 93 L.Ed.2d 473 (1986). Although a defendant may have been legally insane at the time he gave the confession, "[a]bsent police conduct causally related to the confession, there is simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law." *Id.* at 164, 107 S.Ct. at 520. Thus, in determining whether a confession was "voluntary" for purposes of due process, "[t]he relevant test no longer focuses on the defendant's free will, as it has in the past," but instead focuses "on the presence or absence of police coercion." *United States v. Raymer*, 876 F.2d 383, 386 (5th Cir.), *cert. denied*, 493 U.S. 870, 110 S.Ct. 198, 107 L.Ed.2d 152 (1989).

Nonetheless, "[p]olice exploitation of the mental condition of a suspect, using 'subtle forms of psychological persuasion' could render a confession involuntary." *Raymer*, 876 F.2d at 386–87 (quoting *Connelly*, 479 U.S. at 164–65, 107 S.Ct. at 520–21). *See also McCall v. Dutton*, 863 F.2d 454, 459 (6th Cir.1988), *cert. denied*, 490 U.S. 1020, 109 S.Ct. 1744, 104 L.Ed.2d 181 (1989). Moreover, the fact that a confes-

444

sion may not be constitutionally "involuntary" due to a lack of official coercion does not exclude the possibility that it may nonetheless be unreliable—and thus subject to exclusion under the rules of evidence. *Connelly*, 479 U.S. at 167, 107 S.Ct. at 521–22 (citing Fed.R.Evid. 601).

The direct evidence of defendant's intoxication or sobriety at the time of his arrest and statement came from defendant, who testified he was high on cocaine, and from an arresting officer, who opined that defendant did not appear to be high on drugs.

In addition, the court has reviewed a videotape of the November 1991 incident leading to defendant's arrest. The police made this tape surreptitiously approximately 45 minutes before defendant was interviewed, and it features a conversation between defendant and a cooperating individual. Defendant speaks with slurred speech and a raspy weak voice, and appears to be either extremely fatigued or intoxicated. However, defendant's comments during his conversation with the cooperating individual show that defendant was oriented as to time, place and, most important, clearly understood the purpose of his visit to the cooperating individual. During the conversation, which lasted several minutes, defendant discussed in detail his desire to acquire not merely a small quantity of cocaine but also a much larger quantity as well as the means through which he planned to distribute the larger quantity.

The court also heard the testimony of defendant's wife and of a local dentist named Murphy. Neither of these witnesses saw defendant on the evening of his arrest but both claimed to have seen defendant high on cocaine. Indeed, a fair summary of these witnesses' testimony is that defendant was high on cocaine much of the time. Dr. Murphy, defendant's friend and client, testified that he had seen defendant actually ingest cocaine on 15–20 occasions in the past year. Both defendant's wife and Dr. Murphy testified that when defendant was high on cocaine he had a short attention span and did not carefully think things through. The testimony of Dr. Murphy to this effect was considerably suspect

since Murphy also testified that defendant was handling legal business for him during the same period when he had seen defendant ingest cocaine.

The court finds that defendant had a cocaine dependency in November, 1991 and that defendant's actions in the videotape certainly are suggestive that defendant was under the influence of something, most probably cocaine. The court finds uncredible that Detective Benton, *allegedly* an expert in identifying persons who are intoxicated, would not at least have suspected that defendant was high on something at the time of his arrest and statement.

■ These findings, however, do not resolve whether defendant's statements were in fact involuntary. The government has the burden to establish that statements elicited during the custodial interrogation were the result of defendant's knowing and intelligent waiver of his privilege against self-incrimination and the right to retained or appointed counsel. *E.g., McNeil v. Wisconsin,* — U.S. —, —, 111 S.Ct. 2204, 2207–08, 115 L.Ed.2d 158, 167 (1991). The court must assess the voluntariness of defendant's statements in light of the totality of the circumstances. *Schneckloth v. Bustamonte,* 412 U.S. 218, 226, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854 (1973). Some of the factors that bear on that determination are the defendant's age, level of education, the location of the interrogation, the length of the detention, and the use of physical punishment such as deprivation of food or sleep. *Id.*

■ The court finds that the government has sustained its burden of proving both the voluntariness and reliability of defendant's statements. Defendant is an attorney who appears to be an intelligent man. Although in the videotape defendant appears to be under the influence of narcotics, he nonetheless demonstrates complete coherence. There is adequate, although not overwhelming, evidence to support the government's position that defendant was similarly lucid when he was interviewed approximately 45 minutes later.

Accordingly, the court will deny the motion to suppress.

## II. *Severance of Counts*

Pursuant to Fed.R.Crim.P. 14, defendant moves for separate trials on the two counts of the indictment.

Defendant contends that there is no nexus between the events of the two counts of his indictment, and that his defense as to each will differ. As to Count II relating to the June arrest, defendant's defense will be that he did not know what was in the package he was carrying. As to Count I relating to the November arrest, the defense will be outrageous government conduct and entrapment. Thus, the defendant argues that there is a danger of unfair prejudice in that the jury will infer defendant's knowledge of the contents of the package in Count II based on his conduct in Count I, and that the jury will infer defendant's predisposition to commit Count I based on his conduct in Count II.

■ Rule 8(a) of the Federal Rules of Criminal Procedure allows the government to charge two or more offenses in the same indictment "if the offenses charged ... are of the same or similar character...." A defendant seeking a Rule 14 severance of separate counts against him "bears a heavy burden of showing real prejudice to his case." *United States v. Burrell*, 720 F.2d 1488, 1492 (10th Cir.1983). "Prejudicial joinder occurs under Rule 14 of the Federal Rules of Criminal Procedure only 'if an individual's right to a fair trial is either threatened or actually deprived.'" *United States v. Sturmoski*, 971 F.2d 452, 460 (10th Cir.1992). Rule 8(a) allows the government to charge a defendant with separate counts of possession with intent to distribute controlled substances that involve separate, unrelated instances. *See United States v. Cox*, 934 F.2d 1114, 1119 (10th Cir.1991); *United States v. Kellerman*, 432 F.2d 371, 374–75 (10th Cir.1970).

In *United States v. Burrell*, 720 F.2d 1488, 1492–93 (10th Cir.1983), the court rejected an argument that severance was required where a single defendant raised an entrapment defense to one charge, and a non-participation defense to another. The court admitted that the degree of antagonism between these two defenses is greater when being raised by one defendant, as opposed to the situation where the antagonism is between the defenses of two co-defendants. Nonetheless, the court was "not persuaded that in such a case justice requires severance so that the defendant can take such positions without the jury being aware of the differences in defendant's testimony on these similar transactions which were closely related in time." *Id.* at 1493.

■ It has also been stated that in ruling on a Rule 14 motion to sever counts that are alleged to be of the same or similar character, "the most important consideration is whether evidence of one offense would have been admissible at a trial of the other offense, ...." 1 C. Wright, *Federal Practice and Procedure* § 143, at 492 (2d ed. 1982). Although evidence of "other crimes" is not admissible to prove a propensity to commit the alleged offense, *see United States v. Harrison*, 942 F.2d 751, 759 (10th Cir.1991), evidence of other wrongs is admissible if offered for and relevant to a proper purpose, "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, ...." Fed. R.Evid. 404(b); *United States v. Record*, 873 F.2d 1363, 1374–75 (10th Cir.1989). This circuit has "long recognized the admissibility of previous wrongs and crimes in the context of narcotics violations, especially when the prior activity was close in time, highly probative, and similar to the activity with which the defendant is charged." *United States v. McKinnell*, 888 F.2d 669, 676 (10th Cir.1989). *See also United States v. Suntar Roofing, Inc.*, 897 F.2d 469, 479 (10th Cir.1990) (closeness in time relevant).

■ The court finds that the conduct charged in Count II is relevant to establish defendant's predisposition to commit the offense charged in Count I. If the jury were to conclude that defendant knew of the contents of the package with which he was arrested in June 1991, it could properly

infer predisposition to commit the subsequent November offense. Similarly, the November offense is relevant to the element of defendant's knowledge and intent in committing the offense charged in Count II. Finally, the closeness in time between the two offenses persuades the court that both offenses are admissible against the other pursuant to Fed.R.Evid. 404(b). *See United States v. Morgan,* 936 F.2d 1561, 1572 (10th Cir.1991) (quoting *Record,* 873 F.2d at 1375), *cert. denied,* — U.S. —, 112 S.Ct. 1190, 117 L.Ed.2d 431 (1992). Accordingly, the court will therefore deny the motion to sever.

### III. *Discovery Materials* (Doc. 29)

Defendant has made several discovery requests to which the government objects.

▬▬▬ As the court expressed at hearing, the court believes that most criminal discovery disputes are largely unnecessary, and that an open-file policy on the part of the government would do much to conserve valuable defense, prosecutorial, and court time, as well as to avoid unnecessary delay at trial. *See United States v. Wright,* 826 F.2d 938, 942 (10th Cir.1987) (disapproving of delayed discovery by government); *United States v. Behrens,* 689 F.2d 154, 158 (10th Cir.) (same), *cert. denied,* 459 U.S. 1088, 103 S.Ct. 573, 74 L.Ed.2d 934 (1982). Although the court may not compel such a policy, the court strongly encourages the government to provide liberal discovery. *United States v. Jensen,* 608 F.2d 1349, 1358 (10th Cir.1979) (that "defendants are often at a disadvantage because they cannot know with certainty what information the government has ... is a good reason for compelling liberal discovery before trial"). The government shall construe liberally any requests for *Brady* material and resolve all doubts in favor of disclosure. *See United States v. Moreno–Rodrigez,* 744 F.Supp. 1040, 1042 (D.Kan. 1990); *United States v. Countryside Farms, Inc.,* 428 F.Supp. 1150, 1154 (D.Utah 1977); *United States v. Penix,* 516 F.Supp. 248, 254–55 (W.D.Okl.1981). If it appears during the course of trial that the government has failed to produce evidence

that is "material to the preparation of the defendant's defense," Fed.R.Crim.P. 16(a)(1)(C), the court will exercise its discretionary authority "to permit the discovery or inspection, grant a continuance, or prohibit the [government] from introducing evidence not disclosed, ...." *Id.* 16(d)(2). *See also United States v. Edmonson,* 962 F.2d 1535, 1546 (10th Cir.1992) (trial court properly allowed defendant seven days to inspect before allowing government to introduce new evidence); *United States v. Kendall,* 766 F.2d 1426, 1441 (10th Cir. 1985) (use of surprise evidence at trial may require continuance if defendant is unfairly surprised), *cert. denied,* 474 U.S. 1081, 106 S.Ct. 848, 88 L.Ed.2d 889 (1986).

### A. Count II: Items Requested in ¶¶ 1–8 of motion

1. Item # 1: *Statements Made by Defendant to Detective Jerry Harper of the Wichita Police Department.*

▬▬ Defendant requests any notes or reports made by a detective of the Wichita Police Department pursuant to an interview of defendant in November, after defendant's arrest for the incidents charged in Count I of the indictment. The government responds that it will produce any statements made by defendant to members of the U.S. Postal Service. The government opposes production of any statements made by defendant to members of the Wichita Police Department on the grounds that Fed.R.Crim.P. 16 only requires disclosure of statements made to "government agents." (Gov't Response, Doc. 32, at ¶ 1). However, "[t]he fact that [defendant's] statement was made to a state [official] does not make the rule inapplicable." *United States v. Mitchell,* 613 F.2d 779, 781 (10th Cir.), *cert. denied,* 445 U.S. 919, 100 S.Ct. 1283, 63 L.Ed.2d 604 (1980); *see also United States v. Heath,* 580 F.2d 1011, 1018–19 & n. 1 (10th Cir.1978), *cert. denied,* 439 U.S. 1075, 99 S.Ct. 850, 59 L.Ed.2d 42 (1979); *United States v. Jensen,* 608 F.2d 1349, 1357 (10th Cir.1979) (under Rule 16, "[t]here is some duty of inter-agency discovery, which normally can be discharged 'by searching, or requesting

that search be made, of the files of administrative or police investigations of the defendant, in addition to his own files' "). The government shall disclose forthwith any statements made by defendant to state officers who have been cooperating with the government in the prosecution of this case.

2. Items ## 2–8:

 The government responds to these requests by objecting on the ground of materiality within the meaning of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and the ground that the requested items are in the control of Wichita Police Department. To the extent that any of the requested items are *Brady* material, and are within the possession of the prosecutor or state agents who have lent assistance to the prosecution of this case, the government shall disclose the requested items forthwith.

B. Count I: Items requested in ¶¶ 9–10

1. Item # 9: *Evidence Relating to the Credibility of the Informant.*

 The government responds that it will produce the informant's criminal history and plea agreement. The government shall also produce forthwith any other information in its possession relevant to the credibility of the informant and material within the meaning of *Brady. See Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972); *United States v. Bagley*, 473 U.S. 667, 676, 105 S.Ct. 3375, 3380, 87 L.Ed.2d 481 (1985); *United States v. Reid*, 911 F.2d 1456, 1460 (10th Cir.1990), *cert. denied*, — U.S. —, 111 S.Ct. 990, 112 L.Ed.2d 1074 (1991); *United States v. Buchanan*, 891 F.2d 1436, 1443 (10th Cir.1989), *cert. denied*, 494 U.S. 1088, 110 S.Ct. 1829, 108 L.Ed.2d 958 (1990).

2. Item # 10: *Documents and Other Information Indicating that Law Enforcement Authorities had Knowledge that Defendant was a Drug User or Drug Addict Before November 25, 1991.*

The government opposes this request on the grounds that such information is irrelevant to the defense of either entrapment or outrageous government conduct.

 "When the government's conduct during an investigation is sufficiently outrageous, the courts will not allow the government to prosecute offenses developed through that conduct." *United States v. Mosley*, 965 F.2d 906, 908 (10th Cir.1992). The defense of outrageous government conduct is distinguished from entrapment "in that the entrapment defense looks to the state of mind of the defendant to determine whether he was predisposed to commit the crime for which he is prosecuted." *Id.* (citing *Jacobson v. United States*, — U.S. —, —, 112 S.Ct. 1535, 1540, 118 L.Ed.2d 174 (1992) (no predisposition as a matter of law)). The defense of outrageous government conduct is a defense addressed to the trial court and not the jury. *United States v. Burrell*, 720 F.2d 1488, 1494 (10th Cir.1983); *United States v. Salazar*, 720 F.2d 1482, 1488 (10th Cir.1983), *cert. denied*, 469 U.S. 1110, 105 S.Ct. 789, 83 L.Ed.2d 783 (1985).

In *Mosley*, the court refused to consider the argument that a defendant's drug addiction is relevant to the defense of outrageous conduct, because defendant had not raised this argument below and because defendant had offered no evidence "that the government knew of, much less took advantage of, [defendant's] addiction." 965 F.2d at 914. Diggs, however, has raised a timely motion for the production of such evidence.

 Although, as the government argues, evidence of drug addiction may *also* be evidence of a predisposition that defeats the defense of entrapment, *see United States v. Ford*, 918 F.2d 1343, 1348 (8th Cir.1990), this does not defeat the obvious relevancy that such evidence may have to the defense of outrageous government conduct. Defendant alleges that the government knew of his addiction; that defendant declined the repeated entreaties of government agents to purchase drugs; and that the government was finally able to induce him to take possession of drugs that he

could not afford. Evidence indicating that the government may have overborne defendant's will by taking advantage of his drug addiction is relevant to the defense of outrageous government conduct. The court will therefore order production forthwith of any evidence within the government's possession [1] indicating knowledge on the part of government agents that defendant was a drug addict.

### IV. *Conclusion*

Accordingly, the court hereby denies defendant's motion to suppress (Doc. 27), and defendant's motion to sever counts. (Doc. 25). The court grant in part and denies in part defendant's motion for discovery materials, as set forth in this order. (Doc. 29).

The videotape and transcript shall be filed with this order.

IT IS SO ORDERED.

**1.** *The court reads defendant's request to be directed toward any existing* material indicating that the police had knowledge of defendant's drug addiction at the time he was targeted.