Lou MALIS, Individually and on behalf of all others similarly situated, Plaintiff-Appellant,

v.

Carla HILLS, in her official capacity as Secretary of the Department of Housing and Urban Development, and Carl Varadian, in his official capacity as Area Rehabilitation Loan Specialist for the Department of Housing and Urban Development, Defendants-Appellees.

No. 76–2593.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 4, 1978.

Decided Dec. 7, 1978.

Dolores M. Coulter, Legal Services of Eastern Mich., Flint, Mich., Edward J. Hoort, Michigan Legal Services, Detroit, Mich., for plaintiff-appellant.

James K. Robinson, U. S. Atty., Detroit, Mich., William Kanter, David Epstein, John F. Lillard, Dept. of Justice, Washington, D. C., Joan M. Wilbon, for defendants-appellees.

Before PHILLIPS, Chief Judge, MERRITT, Circuit Judge, and PECK, Senior Circuit Judge.

JOHN W. PECK, Senior Circuit Judge.

Appellant is a welfare mother who receives benefits under the Federal Aid to Families with Dependent Children (ADC) program, 42 U.S.C. § 601 *et seq.* (1975 ed. and Supp. IV). These ADC benefits constitute most, if not all, of her annual income of $4,368. Appellant brought this action against the Secretary of the Department of Housing and Urban Development (HUD) when the Secretary did not approve her application for a housing rehabilitation loan pursuant to section 312 of the Housing Act of 1964, 42 U.S.C. § 1452b.[1] Appellant alleges that her application was not approved because HUD, as a matter of policy, grants a section 312 loan to an ADC recipient only if the state welfare department agrees to forward vendor payments from the recipient's monthly benefits directly to HUD's loan servicing agency. This policy guarantees payment of any amounts due on the recipient's outstanding loan balance. The district court granted the government's motion for summary judgment on the ground that the HUD policy, if it in fact exists, is properly within the authority granted to the Secretary by the provisions of the Housing Act. Appellant appeals, alleging that the Secretary's action was an abuse of discretion and that HUD's direct payment policy violates the constitutional guarantees of equal protection and due process under the law. We affirm the district court's grant of summary judgment in favor of the government.

## I

The Rehabilitation Loan Program, set forth in section 312 of the Housing Act, empowers the Secretary of HUD to authorize federally-funded loans for the purpose of rehabilitating residential housing in designated areas of the country. Section 312(a)(3), however, restricts the power of the Secretary under the program by mandating that "no loan shall be made under this section unless . . . the loan is an acceptable risk taking into consideration . . . the ability of the applicant to repay." Appellant applied to the Secretary of HUD for a section 312 loan in 1975. In a timely fashion her application was sent to one of HUD's area loan offices where a regional loan examiner determined that appellant's low annual income raised serious doubts as to her ability to repay the amount requested.[2] On the basis of the examiner's determination, and despite the fact that appellant had adequate equity in her home to pledge as security for the loan, the HUD office concluded that appellant could satisfy the "acceptable risk" requirement of section 312 only if the Michigan welfare department agreed to forward her monthly ADC benefits directly to HUD's loan servicing agency. The state welfare department never acted on the suggestion and HUD had not closed the loan at the time plaintiff filed her complaint in the district court.

Appellant argues that HUD's action in placing the direct payment condition on her loan application constituted an abuse of discretion reviewable by this Court under the Administrative Procedure Act, 5 U.S.C.

---

1. Section 312 of the Housing Act of 1964, 42 U.S.C. § 1452b, provides in part:

    (a) The Secretary is authorized, through the utilization of local public and private agencies where feasible, to make loans as herein provided to the owners and tenants of property to finance the rehabilitation of such property. No loan shall be made under this section unless—

    \*   \*   \*   \*   \*   \*

    (3) the loan is an acceptable risk taking into consideration the need for the rehabilitation, the security available for the loan, and the ability of the applicant to repay the loan.

    \*   \*   \*   \*   \*   \*

    (c) A rehabilitation loan made under this section shall be subject to the following limitations:

    (1) The loan shall be subject to such terms and conditions as may be prescribed by the Secretary.

    \*   \*   \*   \*   \*   \*

    (5) A loan shall be secured as determined by the Secretary.

2. A HUD regional loan examiner computed that when all of appellant's fixed monthly expenses, including a projected debt service for the HUD loan, were deducted from her annual income of $4,368, she was left with $1.50 per day per person for her family of four.

§ 701 *et seq.*[3] In certain circumstances a federal court may set aside the action of an administrative agency. However, a federal court is allowed to modify the action of the administrative agency only when the record substantiates that the agency's action was "arbitrary and capricious." 5 U.S.C. § 706. Accordingly, when the Secretary of HUD acts pursuant to a statute such as the Housing Act of 1964, this Court must accord "great deference" to the Secretary's actions and may reverse such determinations only when they are "clearly wrong." *See Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965); *Knight Newspapers, Inc. v. United States,* 395 F.2d 353, 359 (6th Cir. 1968). *See also Begley v. Mathews,* 544 F.2d 1345 (6th Cir. 1976), *cert. denied,* 430 U.S. 985, 97 S.Ct. 1684, 52 L.Ed.2d 380 (1977); *Big Rivers Electric Corporation v. EPA,* 523 F.2d 16 (6th Cir. 1975), *cert. denied,* 425 U.S. 934, 96 S.Ct. 1663, 48 L.Ed.2d 175 (1976); *American Federation of State Employees v. City of Cleveland,* 484 F.2d 339 (6th Cir. 1973).

Appellant's charge that HUD's action was arbitrary and capricious must be assessed in the context of the particularly wide discretion vested in the Secretary of HUD by section 312 of the Housing Act and the provisions incorporated therein. In capsulized form these provisions read as follows:

> No loan shall be made . . . unless . . . the loan is an acceptable risk taking into consideration . . . the ability of the applicant to repay the loan.
>
>     *     \*     \*     \*     \*     \**
>
> A loan shall be secured as determined by the Secretary.
>
>     *     \*     \*     \*     \*     \**
>
> [T]he Secretary . . . may . . . include in any contract or instrument made pursuant to this subchapter such other covenants, conditions, or provisions as [she] may deem necessary to assure that the purposes of this subchapter will be achieved.

42 U.S.C. § 1452b and 12 U.S.C. § 1749a(c) incorporated through 42 U.S.C. § 1452b(e). The Supreme Court in *Knebel v. Hein,* 429 U.S. 288, 97 S.Ct. 549, 50 L.Ed.2d 485 (1977), recently addressed a comparably broad statutory delegation of authority with respect to eligibility under a federal welfare program. The Court in *Hein* sustained the discretion of the Secretary of Agriculture to define eligibility for food stamps even though the Secretary's definition of the term "income" caused a $12 increase in the price of an ADC recipient's food stamp purchase. Although the Court recognized that the Secretary's definition "operate[d] somewhat unfairly in appellee's case," and that "perhaps it might have been more equitable to allow a deduction," 429 U.S. at 294, 97 S.Ct. at 553, the Court nonetheless held that the Secretary's action was "reasonable" and concluded that "the Constitution requires no more." 429 U.S. at 297, 97 S.Ct. 549. Similarly we find that the action of the Secretary of HUD in the present case was reasonable and within the bounds of her statutory discretion. Section 312 of the Housing Act explicitly obligates the Secretary to insure that all persons receiving housing rehabilitation loans possess adequate resources to repay the funds disbursed. Implicit in this obligation is the Secretary's right to condition the approval of loans available under the rehabilitation program. *See, e. g., Saxe v. United States,* 471 F.2d 1293 (2d Cir. 1973). Further the various provisions of the Housing Act indicate that Congress has vested broad discretion in the Secretary to effectuate the "ac-

---

**3.** Section 706 of Title 5 of the United States Code provides in part:

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—

    \*     \*     \*     \*     \*     \*

(2) hold unlawful and set aside agency action, findings and conclusions found to be—
(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . .

ceptable risk" requirement of section 312(a)(3). In the light of appellant's low annual income, the Secretary reasonably exercised this discretion when she placed the direct payment condition on appellant's loan application.[4]

## II

■ Appellant next contends that HUD violates the equal protection guarantees of the Fifth Amendment[5] by imposing special burdens on ADC recipients who apply for section 312 rehabilitation loans. In reviewing the district court's summary judgment on behalf of the government, this Court is required to consider the facts in the light most favorable to appellant and to give appellant the benefit of all reasonable inferences to be drawn from the pleadings, depositions and affidavits filed in the case. See Adickes v. S. H. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Thus we assume for the purpose of this appeal that HUD in fact singles out ADC recipients and requires vendor payments from their ADC benefits as a condition precedent to the granting of housing rehabilitation loans.

The Supreme Court has long recognized that reasonable latitude must be accorded to government agencies in the dispensation of public funds to those in need, even though this latitude will inevitably permit hardships in particular cases. See Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970). When an allegedly unconstitutional classification involves "the area of economics and social welfare" and does not involve suspect classifications or fundamental rights, as in the present case, a court must examine the classification in accordance with a "rational basis" standard. Williams, supra, 397 U.S. at 485, 90 S.Ct. 1153. See also Knebel v. Hein, 429 U.S. 288, 97 S.Ct. 549, 50 L.Ed.2d 485 (1977); Weinberger v. Salfi, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975); Saxe v. United States, 471 F.2d 1293 (2d Cir. 1973). "If [an agency's welfare] classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.'" Williams, supra, 397 U.S. at 485, 90 S.Ct. at 1161, quoting from Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 31 S.Ct. 337, 55 L.Ed. 369 (1911). We find that the district court was correct in concluding that HUD's classification of ADC recipients, if such classification actually exists, satisfies the "rational basis" standard and comports with the equal protection guarantees of the Fifth Amendment. All ADC recipients are, by definition, poor persons with very low annual incomes. See 42 U.S.C. §§ 601 and 602. Thus, consistent with equal protection principles, the Secretary of HUD may specially classify ADC recipients who apply for housing rehabilitation loans in order to carry out her statutory obligation of insuring repayment of these loans. See 42 U.S.C. § 1452b(a)(3).

## III

■ Appellant finally argues that the direct payment condition proposed by HUD is a manifestation of the department's conclu-

---

4. The parties on appeal dispute whether the payment of ADC benefits directly to HUD would violate federal and state welfare regulations. See 42 U.S.C. §§ 605–606; Mich.Comp. Laws § 400.39. We find it unnecessary to resolve this dispute. Even assuming that the direct payment scheme proposed by HUD would be violative of statutory regulations if carried into operation, the Secretary did not violate any regulations by making the request. In the circumstance that the payments are prohibited by federal or state law, the Michigan welfare department should simply reject HUD's proposal.

5. As the Supreme Court stated in Weinberger v. Wisenfeld, 420 U.S. 636, 95 S.Ct. 1225, 43 L.Ed.2d 514 (1975),

> while the Fifth Amendment contains no equal protection clause, it does forbid discrimination that is so unjustifiable as to be violative of due process. . . . This Court's approach to the Fifth Amendment equal protection claims has always been precisely the same as to equal protection claims under the Fourteenth Amendment.

420 U.S. at 638, n. 2, 95 S.Ct. 1228, n. 2 (citations omitted).

sive presumption that all ADC recipients lack the requisite ability to repay loans available under section 312 of the Housing Act. This conclusive presumption, appellant maintains, unconstitutionally forecloses an ADC recipient's due process right to an individualized assessment of his or her financial status.

Even assuming that HUD has in fact established the alleged presumption as to ADC recipients, we find that appellant's due process arguments are without merit. Conclusive presumptions are not necessarily violative of constitutional due process. In a case analogous to the present case, *Weinberger v. Salfi*, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), for example, the Supreme Court upheld a conclusive presumption under the Social Security Act, 42 U.S.C. § 402, *et seq.* (1970 ed. and Supp. III), which prohibited a wage earner's widow or stepchild from receiving insurance benefits if their relationships to the wage earner had not existed nine months prior to his death. The Court therein specifically rejected an expansive reading of the previous cases which had invalidated conclusive presumptions on constitutional grounds, and adhered to [6] a "rational relation" standard for those presumptions involving noncontractual claims to receive public funds.

[A] noncontractual claim to receive funds from the public treasury enjoys no consti-

tutionally protected status, . . . though of course Congress may not invidiously discriminate among such claimants on the basis of a "bare congressional desire to harm a politically unpopular group," . . . or on the basis of criteria which bear no rational relation to a legitimate legislative goal.

422 U.S. at 772, 95 S.Ct. at 2470 (citations omitted).

It is apparent that HUD's conclusive presumption as to ADC recipients, if it does exist, is rationally based and thus constitutionally permissible. As previously stated, pursuant to statute, only needy persons with extremely limited incomes may qualify for ADC benefits. It is, therefore, rational for the Secretary of HUD to presume that all ADC recipients lack sufficient resources to satisfy the "ability to repay" criterion of section 312 of the Housing Act. It would be patently futile to afford each ADC recipient, who is necessarily poor, an opportunity to rebut the presumption.[7] The due process clause allows the government a reasonable measure of flexibility in establishing conclusive presumptions when those presumptions do not involve suspect classifications or fundamental rights. *See Salfi, supra*, 422 U.S. at 774, 95 S.Ct. at 2471.

Intimations in the dissenting opinion to the contrary notwithstanding, we are not

---

6. Prior to *Weinberger v. Salfi*, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), the Court had adopted a "rational relation" standard to test the validity of conclusive presumptions involving non-suspect classifications and non-fundamental rights. *See, e. g., United States v. Murry*, 413 U.S. 508, 514–15, 93 S.Ct. 2821, 37 L.Ed.2d 782 (1973), and *United States v. Moreno*, 413 U.S. 528, 534, 93 S.Ct. 2832, 37 L.Ed.2d 767 (1973), cases relied upon by appellant.

7. As a matter of statutory interpretation, we find that the Secretary of HUD properly exercised the discretion vested in her by section 312 of the Housing Act of 1964, 42 U.S.C. § 1452b. Nonetheless, we are in sympathy with appellant's claim that the present case is a classic example of "the left hand of government not knowing what the right hand is doing." District Judge James Harvey, in granting the government's motion for summary judgment, provided the following insights and recommendations.

It is indeed unfortunate that the decisions of two federal agencies, HUD and HEW, reasonable when applied independently, should combine to deprive a citizen of a benefit for which Congress probably intended she would be eligible. Plaintiff has an equity in her home which far exceeds the amount of the loan she sought. Had HUD granted her the loan, HEW would have increased her ADC benefits to reflect the monthly payment thereupon. There is no indication in the record that plaintiff is anything but a thrifty, prudent homeowner who has the disadvantage of being poor.

However, it is not the function of this Court to re-legislate to avoid this dilemma. The Court believes, nevertheless, that the agencies involved here should re-evaluate their policies to avoid the bureaucratic confusion evident in this case.

insensitive to the fact that this result may be inimical to the interests of one, as the district judge pointed out, whom the record does not indicate to be "anything but a thrifty, prudent homeowner who has the disadvantage of being poor." However, that circumstance does not justify this Court's invasion of the province of the legislative branch of government, and, mindful of the adage that "hard cases make bad law," we decline the opportunity to take action not properly within our powers.

The district court's grant of summary judgment in favor of the government is affirmed.

MERRITT, Circuit Judge, dissenting.

I understand from the record that the facts taken as true for purposes of the motion for summary judgment in the court below are as follows: The plaintiff in this case is an admittedly frugal and deserving but impoverished woman who lives with her several minor children in her own, paid-for home in a deteriorating neighborhood scheduled for urban renewal in the city of Detroit. Without any support from her divorced husband, she receives aid to dependent children payments in order to maintain her family. Section 312 of the Housing Act of 1964 provides for low interest rate loans to poor people in slum clearance and urban renewal areas so that they can repair their homes and bring them up to building code standards. The legislation is intended to preserve the home and prevent demolition and displacement of families in urban renewal areas. The mother's monthly welfare check would be increased by approximately $20, the amount of her monthly mortgage payments, if she receives the loan. She is eligible and would receive the loan under § 312, except for one fact: HUD insists that the state welfare office send the check for the monthly mortgage payments directly to HUD. HUD knows that she is willing to comply with this request but cannot do so because HEW funds the welfare program and has regulations that prevent the welfare office from making payments directly to HUD. Under HEW rules, the welfare office must send the check to the mother and not to HUD. The effect of this is intentionally to single out welfare mothers as a class who are ineligible for housing loans for the poor in urban renewal areas—because HUD insists on a condition which HEW refuses to permit.

If the facts assumed by the District Court in ruling on the summary judgment motion are true, this case represents an isolated instance of federal bureaucratic irrationality that I do not believe responsible executive officials should stand for or that this Court can afford to sanction. However unpopular and unworthy welfare mothers may be in today's climate of opinion, and however stringent the test of arbitrariness may be in matters of welfare economics under the Administrative Procedure Act and equal protection, this is beyond the pale. It offends the equal protection clause as recently interpreted by the Supreme Court. *Compare United States Department of Agriculture v. Moreno*, 413 U.S. 528, 534, 93 S.Ct. 2832, 37 L.Ed.2d 767 (1973) (exclusion of certain households from food stamp assistance simply to burden and stigmatize politically unpopular groups unconstitutional); *New Jersey Welfare Rights Organization v. Cahill*, 411 U.S. 619, 621, 93 S.Ct. 1700, 36 L.Ed.2d 543 (1973) (denial of public assistance to families with illegitimate children invalid); *Memorial Hospital v. Maricopa County*, 415 U.S. 250, 94 S.Ct. 1076, 39 L.Ed.2d 306 (1974) (durational residency requirements for receipt of welfare invalid); *Smith v. Cahoon*, 283 U.S. 533, 51 S.Ct. 582, 75 L.Ed. 1264 (1931) (under-inclusive statute exempting agricultural transportation from regulation of transportation companies invalid as irrational); *with Dandridge v. Williams*, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970) (absolute welfare limit of $250 per month per family regardless of family size valid); *Jefferson v. Hackney*, 406 U.S. 535, 92 S.Ct. 1724, 32 L.Ed.2d 285 (1972) (welfare scheme allotting less to AFDC families than blind, disabled and elderly not stigmatizing and therefore valid, but see Mr. Justice Marshall's dissent); and *City of New York v. Miln*, 36 U.S. (11 Pet.)

102, 142, 8 L.Ed. 888 (1837), poverty a sign of "moral pestilence" and moral and mental deficiency; thankfully, a case that is now overruled, *Goldberg v. Kelly*, 397 U.S. 254, 265, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).

I would reverse the action of the court below granting summary judgment for the government on these issues and remand the case for trial.