Madonna BUCHANAN, Deborah A. Young, Rosa Colon, Plaintiffs

v.

Patrolman Ignatius A. SOWA, Patrolman George Deli, William Hanton, Police Chief, John Berry, Captain, City of Cleveland, Defendants.

Civ. A. No. C83–1197.

United States District Court, N.D. Ohio, E.D.

Aug. 13, 1984.

Jeffrey L. Kocian, Cleveland, Ohio, for plaintiffs.

Nick Tomino, Asst. Director of Law, Cleveland, Ohio, for defendants.

## MEMORANDUM AND ORDER

ANN ALDRICH, District Judge.

This civil rights action alleges violations of 42 U.S.C. §§ 1983, 1985 and 1986, and includes pendent state tort claims for false arrest, false imprisonment, malicious prosecution, and defamation of character. The plaintiffs, Madonna Buchanan, Deborah A. Young, and Rosa Colon, assert that an allegedly unlawful arrest by Cleveland police officers Ignatius A. Sowa and George Deli deprived them of their constitutional rights to liberty and property without due process of law. Also named as defendants are the City of Cleveland, police chief William Hanton, and Captain John Berry. Before this Court are defendants' Motions for Summary Judgment. Upon consideration, this Court finds that the material facts with respect to the § 1983 claims are undisputed and that the defendants are entitled to judgment as a matter of law. The §§ 1985 and 1986 and pendent state claims are dismissed.

### I.

Shortly after midnight on December 23, 1982, officers Sowa and Deli went to a building at East 24th Street in Cleveland to investigate a complaint of suspicious activity. No signs of any kind were posted on the exterior of the building. The front door was unlocked and the officers walked inside. A female, later identified as Madonna Buchanan, opened a sliding glass window and asked what they wanted. After the officers said that they wanted to come in, Buchanan opened an interior door and allowed the officers to enter.

Deli and Sowa then observed two other females who identified themselves as Rosa Colon and Deborah Young. They questioned all three women. Buchanan apparently did most of the responding. She stated that they were employees of a massage parlor, or health spa, located on the premises, and that they worked giving body rubs. She also told the officers that she did not know who ran or owned or operated the business, or whether it was licensed. They offered no checks or pay stubs to verify that they were employees. They could not state who to contact in case of an emergency. When asked how they were paid, they responded that money was left for them in envelopes with their names on them but they did not know who left the money. When asked if there was any way that they could demonstrate to the officers that they had the permission of the owner of the building to be there, they all said no.

In response to this investigation, Deli and Sowa arrested Buchanan, Young, and Colon for criminal trespass and possible breaking and entering "if further investigation revealed that they were trespassing for purposes of committing a theft offense or a felony." *See* Deli affidavit. After their arrest and booking at police headquarters, police took $150.00 from Buchanan, $440.00 from Colon, and $40.00 from Young, and placed the money in the police property room for "possible evidence in the breaking and entering investigation." *Id.* All three plaintiffs state in their affidavits that they have requested, but have been unable to obtain, release of their money. Charges against plaintiffs were subsequently dismissed.

**1012**

## II.

The federal law portion of the complaint purports to be "an action at law pursuant to [42] U.S.C. Section 1983 [1], 1985 [2] and 1986 [3], to redress the deprivation, under color of statute, ordinance, regulation, customs or usage of rights, privileges and immunities secured to Plaintiff[s] by the Fourth, Eighth, and Fourteenth Amendments to the Constitution of the United States." Count I alleges that the defendants, "absent probable cause, illegally arrested Plaintiffs for breaking and entering", and also "continued to harass them after their arrest by coming onto the premises and threatening them and forcing them to leave said premises while they were in the course of their employment." Counts II–IV concern the funds seized from the three plaintiffs alleging that the defendants seized, retained, and refused to return the funds "without any legal action, probable cause or without any legal authority."

██ In determining whether to dismiss all or part of a complaint, its allegations are taken as true at this stage in the case. *Hughes v. Rowe*, 449 U.S. 5, 10, 101 S.Ct. 173, 176, 66 L.Ed.2d 163 (1980) (per curiam); *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir.1976). Charges are only to be dismissed if the plaintiffs can prove no set of facts in support of their claim which would entitle them to relief. In addition, under Fed.R.Civ.P. 56(c), summary judgment may be granted only if there is "no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." All evidence concerning the existence of a genuine issue of material fact must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Hasan v. CleveTrust Realty Investors, Inc.*, 729 F.2d 372 (6th Cir.1984); *Malis v. Hills*, 588 F.2d 545 (6th Cir.1978).

██ The claims under the Eighth Amendment and 42 U.S.C. §§ 1985 and 1986 are frivolous and must be dismissed. The Eighth Amendment ban against cruel and unusual punishment applies only to those convicted of criminal offenses; for persons not convicted, any cause of action is only for deprivation of due process. *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). The only portion of § 1985 conceivably applicable to this case, § 1985(3), applies only to private conspiracies predicated on "racial, or perhaps otherwise class-based, insidiously discriminatory

1. The Civil Rights Act of 1871, 42 U.S.C. § 1983, provides:

   Every person who, under color of any statute, ordinance, regulation, custom, or usage, or any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

2. Section 2 of the Civil Rights Act of 1871, 42 U.S.C. § 1985(3), provides in pertinent part:

   If two or more persons in any State or Territory conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; ...

   in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

3. The companion statute to § 1985, 42 U.S.C. § 1986, provides in pertinent part:

   Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented ...

animus." *Griffin v. Breckenridge,* 403 U.S. 88, 101–02, 91 S.Ct. 1790, 1797–98, 29 L.Ed.2d 338 (1971); *United Brotherhood of Carpenters & Joiners v. Scott,* 463 U.S. 825, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983). No such animus having been alleged here, the § 1985 claim cannot stand. Furthermore, since "[s]ection 1986 is designed to punish those who aid and abet violations of § 1985", where there is "no violation of § 1985 ... there can be no violation of § 1986." *Browder v. Tipton,* 630 F.2d 1149, 1155 (6th Cir.1980).

### III.

The plaintiffs are left, therefore, with two causes of action purporting to arise under § 1983. Counts II–IV involve deprivation of property without due process, in violation of the Fourteenth Amendment. Count I involves deprivation of liberty without due process in violation of the Fourth and Fourteenth Amendments.

#### A.

Recent appellate cases require that summary judgment be granted to defendants with respect to plaintiffs' claim of deprivation of property without due process.

Since *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), plaintiffs in § 1983 actions have not been required to attempt to vindicate their claims in state court before asserting them in federal court. Nonetheless, state law has continued to play an important role in defining the scope of liability under § 1983, largely because due process cases often turn on definitions of "property" or "liberty" that are rooted in state statutory procedures or common law. *See* P. Bator, P. Mishkin, D. Shapiro & H. Wechsler, *The Federal Courts and the Federal System* S234–35 (1973 & Supp.1981). The role of state law is highlighted in *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981); *Vicory v. Walton,* 721 F.2d 1062 (6th Cir.1983); *Campbell v. Shearer,* 732 F.2d 531 (6th Cir.1984); and *Hudson v. Palmer,* — U.S. —, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984).

In *Parratt v. Taylor,* a Nebraska prison inmate commenced an action under § 1983, alleging that prison officials deprived him of property without due process when they negligently lost mail-order hobby materials valued at $23.50. The Court found no due process violation because adequate state remedies were available to redress the wrong.

... Although the state remedies may not provide the respondent with all the relief which may have been available if he could have proceeded under § 1983, that does not mean that the state remedies are not adequate to satisfy the requirements of due process. The remedies provided could have fully compensated the respondent for the property loss he suffered, and we hold that they are sufficient to satisfy the requirements of due process.

451 U.S. at 544, 101 S.Ct. at 1917.

In *Vicory v. Walton,* the Sixth Circuit extended *Parratt* to cover intentional torts by state officers, holding that "the principle being applied does not turn on the question of whether the claimed constitutional tort affecting property is caused by intentional conduct or negligent conduct or is based on strict liability." *Id.* at 1065. It therefore reversed a trial judgment in favor of a plaintiff who alleged that a state officer had intentionally deprived him of property—a mobile home trailer seized as evidence in a state criminal trial—without due process. Ohio law provided the plaintiff with remedies that could have fully compensated him for the property loss sustained, the panel held.

*Vicory* concluded by imposing a sweeping pleading requirement for § 1983 cases involving deprivation of property:

Section 1983 was not meant to supply an exclusive federal remedy for every alleged wrong committed by state officials. Rather, the statute is a remedy for only those wrongs which offend the Constitution's prohibition against property deprivations without section 1983 damage suits claiming the deprivation of a property interest without procedural due

process of law, the plaintiff must plead and prove that state remedies for redressing the wrong are inadequate. In a procedural due process case under section 1983, the plaintiff must attack the state's corrective procedure as well as the substantive wrong. In the instant case the plaintiff has neither alleged nor shown any significant deficiency in the state's remedies.

*Id.* at 1065–66.

The Sixth Circuit reaffirmed *Vicory* in *Campbell v. Shearer,* and in *Hudson v. Palmer* the Supreme Court adopted the views expressed in both cases. *Hudson* arose out of a "shakedown" search of a prisoner's cell, during which the corrections officer allegedly intentionally destroyed certain noncontraband property belonging to the prisoner. Holding that Virginia law provided an adequate postdeprivation remedy to the prisoner, the Court explicitly extended *Parratt* to intentional deprivations of property:

> If negligent deprivations of property do not violate the Due Process Clause because predeprivation process is impracticable, it follows that intentional deprivations do not violate that Clause provided, of course, that adequate state postdeprivation remedies are available. Accordingly, we hold that an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available. For intentional, as for negligent deprivations of property by state employees, the State's action is not complete until and unless it provides or refuses to provide a suitable postdeprivation remedy.

—— U.S. at ——, 104 S.Ct. at 3204.

■ Plaintiffs have failed to make any showing that their postdeprivation remedies under Ohio law—such as actions in replevin and conversion—are inadequate. Accordingly, plaintiffs have no claim for deprivation of property without due pro-

cess of law under § 1983, and summary judgment is granted with respect to that claim.

**B.**

**1.**

Plaintiffs' allegation that they were deprived of liberty without due process by an illegal arrest raises the question of whether *Parratt* and *Hudson* require a showing of the insufficiency of state remedies in due process cases which do not involve deprivation of property. This Court concludes that, under *Monroe v. Pape,* the plaintiffs in this case continue to state a cause of action under § 1983.

*Monroe v. Pape* was commenced by six black children and their parents, who alleged that thirteen Chicago police officers, who possessed neither search nor arrest warrants, broke into their home, routed them from bed, made them stand naked in the living room, and ransacked every room in the dwelling. The Court held that the plaintiffs possessed a cause of action against the officers under § 1983, deducing from the statute's legislative history that even though the acts were wholly unauthorized by state law, they were independent violations of federal constitutional rights, and concluding that Congress meant to make actionable such violations whenever officers act under color of state authority. Justice Douglas wrote:

> ... It is no answer that the State has a law which if enforced would give relief. The federal remedy is supplementary to the state remedy, and the latter need not first be sought and refused before the federal one is invoked.

365 U.S. at 183, 81 S.Ct. at 482.

*Monroe v. Pape* precipitated a massive increase in federal civil rights filings, prompting the Supreme Court to make clear that § 1983 should not be regarded as "a font of tort law to be superimposed upon whatever systems may already be administered by the States." *Paul v. Davis,* 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976). The Court has

stressed that certain interests protected by state law are neither "liberty" nor "property" interests within the meaning of the Fourteenth Amendment, *Id.; Baker v. McCollan,* 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979), and that certain deprivations of liberty are so *de minimus* as to be unprotected by the federal Constitution. *Ingraham v. Wright,* 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977). Two district courts in this circuit have merged the reasoning of these cases with *Parratt* to conclude that § 1983 provides no cause of action for an unlawful arrest unless plaintiffs can demonstrate the inadequacy of state remedies. *Graves v. Wayne County,* 577 F.Supp. 1008 (E.D.Mich.1984); *Barnier v. Szentmiklosi,* 565 F.Supp. 869 (E.D.Mich. 1983).

Nonetheless, to apply the *Parratt* and *Hudson* pleading requirements to this case would contradict both *Monroe v. Pape* and recent Sixth Circuit precedent. Nothing in either Supreme Court case questions the continuing validity of *Monroe* in the Fourth Amendment context. Moreover, in *Wilkerson v. Johnson,* 699 F.2d 325 (6th Cir.1983), the Court of Appeals explicitly reaffirmed *Monroe,* limited *Parratt,* and held that the right to a barbershop license was a "liberty interest" protected by the Constitution, the deprivation of which was actionable under § 1983 regardless of whether adequate state remedies existed or were exhausted. Judge Merritt—the author of *Vicory* and *Campbell*—stated:

> *Parratt* does not control this case for two reasons. First, the holding in *Parratt* must be construed in light of the Supreme Court's recent decision in *Patsy v. Board of Regents of State of Florida,* [457] U.S. [496], 102 S.Ct. 2557, 73 L.Ed.2d 172] (1982). In that case, the Court held that § 1983 plaintiffs need not exhaust state administrative remedies before bringing an action in federal court. Since the decision in *Monroe v. Pape,* 365 U.S. 167 [81 S.Ct. 473, 5 L.Ed.2d 492]. (1961), it has been the rule that a § 1983 plaintiff need not attempt to vindicate his or her claim in state court before asserting it in federal court.

592 F.Supp.—24

To apply the holding of *Parratt* outside the prisoners' rights context is inconsistent with *Monroe* and *Patsy.* The considerations that require prior exhaustion of state administrative remedies in state tax cases before bringing a § 1983 action for damages, *see Fair Assessment in Real Estate Ass'n. v. McNary,* 454 U.S. 100 [102 S.Ct. 177, 70 L.Ed.2d 271] (1981); Note, *The Supreme Court, 1981 Term,* 96 Harv.L.Rev. 207 (1982), do not apply here. There appear to be no strong considerations of congressional or judicial policy that require the claimants to first pursue state administrative or judicial remedies.

699 F.2d at 329. Similarly, *Dunn v. Tennessee,* 697 F.2d 121, 125 (6th Cir.1982), reversed a lower court dismissal of a § 1983 action challenging an allegedly illegal search and arrest, stating that if the facts as alleged in the complaint were true "it is arguable that [plaintiff's] interest in being free from unreasonable search and seizure, as guaranteed by the Fourth Amendment, was impaired by the officers' search." Finally, the *Campbell v. Shearer* panel recognized that a Fourth Amendment claim against police officers involving a "seizure or deprivation of the person" remains viable under *Monroe.* 732 F.2d at 534 n. 2. Nothing in *Hudson* alters the validity of these holdings.

■ Accordingly, this Court holds that the constitutional violations alleged in the complaint involve precisely the type of misconduct that § 1983 was enacted to prevent, and that the plaintiffs state an actionable claim no matter what remedies are available under state law.

2.

■ That plaintiffs have stated a justiciable claim does not mean, however, that they have been deprived of a right secured by the Constitution. Plaintiffs contend that their Fourth Amendment rights were violated when they were arrested without probable cause. "If probable cause to arrest has been established, [plaintiffs] cannot recover for a violation of civil rights

arising out of arrest." *Greene v. Brown*, 535 F.Supp. 1096, 1100 (E.D.N.Y.1982) (citations omitted); *Vela v. White*, 703 F.2d 147 (5th Cir.1983). Thus, the threshold question is whether Sowa and Deli had probable cause to arrest Buchanan, Young, and Colon. Under *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), this Court must apply an objective, rather than a subjective, standard of reasonableness, in judging allegations of official misconduct.

Probable cause is "defined in terms of facts and circumstances 'sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense.'" *Gerstein v. Pugh*, 420 U.S. 103, 111, 95 S.Ct. 854, 861, 43 L.Ed.2d 54 (1975), quoting *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964). While the Supreme Court has expressed a preference for the use of arrest warrants, an arrest based on probable cause will not be invalidated merely because a warrant was not obtained. *Id.* at 112, 95 S.Ct. at 862. An officer's on-the-scene assessment of probable cause provides "legal justification for arresting a person suspected of crimes." *Id.* at 114, 95 S.Ct. at 863.

In this case, the undisputed facts and circumstances were sufficient to establish probable cause and justify plaintiffs' arrest. The officers aver that they were investigating a complaint of suspicious activity at the building where plaintiffs were subsequently arrested. Buchanan, Young, and Colon allowed Sowa and Deli inside and produced identification, and responded to questioning.

Because they were unable to explain who owned the building, who employed them, whether the business was licensed, how they were paid, or who they would contact in an emergency, the plaintiffs were arrested for violating the criminal trespass statute. That statute provides in part that "No person, without privilege to do so, shall... [k]nowlingly enter or remain on the land or premises of another." Ohio Rev.Code 2911.21.

Plaintiffs argue that the arrest was based on no more than suspicion of criminal activity, which did not constitute probable cause. While it is fundamental that a police officer cannot arrest a citizen simply because he is acting suspiciously, *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the facts in this case clearly go beyond suspicious activity, and do not belie the officers' reasonable belief that a crime was being committed. Plaintiffs also argue that the police conduct was unlawful because the officers had no personal knowledge of the facts giving rise to their arrest. This argument has no merit. No matter what information the police had before the arrest, it is clear that the officers' on-the-scene assessment of probable cause provided legal justification for arresting plaintiffs. *Gerstein v. Pugh*, 420 U.S. at 114, 95 S.Ct. at 863.

This Court must view the issue of probable cause from "the vantage point of a prudent, reasonable, cautious police officer on the scene at the time of the arrest." *United States v. Davis*, 458 F.2d 819, 821 (D.C.Cir.1972). Probable cause requires only a probability of criminal activity, not a prima facie showing. *Zurcher v. Stanford Daily*, 436 U.S. 547, 98 S.Ct. 1970, 56 L.Ed.2d 525 (1978). The totality of circumstances dictate the conclusion that the officers were reasonable in their belief that a crime was being committed. The arrest was based on probable cause and does not give rise to liability under § 1983.

C.

All three plaintiffs seeks to hold the City of Cleveland and two supervisory police officials liable for the actions of the officers. In light of the finding that summary judgment must be granted in favor of the officers, this Court need not determine whether the complaint properly states a claim against the municipality and supervisory officials under *Monell v. New York City Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

## IV.

In light of the rulings on plaintiffs' federal claims, only state law claims remain in their complaint. In its discretion, this Court declines to exercise pendent jurisdiction over their state law claims. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966) ("[I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense; the state claims should be dismissed as well.").

Summary judgment is entered for the defendants on the § 1983 claims, and the §§ 1985, 1986 and pendent state claims are dismissed.

IT IS SO ORDERED.