Gregory Phillip GARCIA, Plaintiff,

v.

Dan WYCKOFF, et al., Defendants.

Civ. A. No. 84–K–530.

United States District Court,
D. Colorado.

July 15, 1985.

for relief against the City and County of Denver, former Denver Police Chief Art Dill, and current Chief Thomas Coogan, alleging negligence in failing adequately to supervise, train, discipline and control Wyckoff in the use of a deadly weapon. Wyckoff and Scanlin filed crossclaims against the City and County of Denver.

Two pending motions are now before the court: defendant City and County of Denver's motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12 and plaintiff's motion for partial summary judgment pursuant to Fed.R.Civ.P. 56. Having carefully reviewed the parties' briefs and motions, as well as the entire file, I am now prepared to rule.

## BACKGROUND

On March 2, 1982, a Greenwood Village police officer observed plaintiff sitting in a stolen car. The officer approached the car and plaintiff fled. Following a 20 minute foot chase, Denver police detectives Dan Wyckoff and Chuck Friend caught Garcia and arrested him for suspicion of auto theft and burglary. At the time of his arrest, Garcia wore only tennis shorts and shoes. Wyckoff and Friend handcuffed plaintiff, placed him in the back of their unmarked police car, and drove to Cherry Creek High School where the Greenwood Village police officer identified Garcia as one of two suspects who ran from the stolen car. At the high school, plaintiff complained to Wyckoff that the handcuffs were cutting off the circulation in his hands, so the detective loosened them.

Wyckoff and Friend then proceeded to take plaintiff to Denver police headquarters. Before they arrived, however, plaintiff escaped. While the police car stopped for a traffic light near the intersection of Alameda and Lincoln, plaintiff slipped one hand out of the handcuff, opened the door and fled. As he crossed Lincoln Street, Garcia was hit by a car. He got up and continued running. Wyckoff chased him through several backyards, down an alley and over fences. In the

David Graham, Graham & Graham, San Luis, Colo., for plaintiff.

David J. Bruno, Bruno, Bruno & Colin, P.C., Lakewood, Colo., for Wyckoff and Scanlan.

Carl R. Mangino, Asst. City Atty., Denver, Colo., for City and County of Denver.

Theodore S. Halaby, Denver, Colo., for all defendants.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

This is a civil rights action for damages and declaratory and injunctive relief. It is difficult to conceive of how a complaint could be more poorly drafted. On March 2, 1982, detective Dan Wyckoff, a Denver police officer, shot plaintiff Gregory Garcia as he eluded Wyckoff in a foot chase following his arrest. Plaintiff alleges that Wyckoff violated his civil rights by using excessive force in apprehending him. He also avers that police officer M.J. Scanlin deprived him of his constitutional rights when Scanlin purportedly concealed Wyckoff's actions and intimidated plaintiff. In addition to these civil rights claims, Garcia purportedly asserts pendent state claims

course of the chase, Wyckoff fired two shots at plaintiff. Although the first shot missed him, the second shot hit Garcia on the left side. He suffered a superficial gunshot wound that was treated at Denver General Hospital. Following his release from the hospital four hours later, Garcia was taken to Denver County Jail. He avers that defendant Scanlin questioned him at approximately 6:00 a.m. the next day and made promises of benefits and medication in exchange for signing a confession.

## DISCUSSION

### I

Before I can reach the merits of either pending motion, preliminary pleading problems require resolution. Specifically, the statutory bases for maintaining the civil rights claims are not clear. The complaint states in the "jurisdiction" paragraph that this action is brought "pursuant to 42 U.S.C. 1981, 1983, 1985, 1986 and 1988 and the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution." (para. 1, complaint). The only cause of action that purports to aver violations of plaintiff's civil rights, however, is the first one. There plaintiff alleges that Scanlin concealed acts of Wyckoff and intimidated plaintiff, that Wyckoff unlawfully harmed plaintiff while acting under color of his authority, that defendants subjected plaintiff to cruel and unusual punishment, and that Wyckoff and Scanlin violated "plaintiff's fourteenth amendment rights to be secure in his person, to be free from punishment without due process, and to equal protection of the laws." (para. 31, complaint).

 Contrary to plaintiff's statement that this is a §§ 1981, 1983, 1985, 1986 and 1988 action, I find that, at best, it is only a § 1983 action. Plaintiff fails to state adequate claims for relief under 42 U.S.C. §§ 1981, 1985, 1986 and 1988. A § 1981 action requires at least an accusation of intentional discrimination. There is no such allegation in the complaint. *See Arnold v. Ballard,* 448 F.Supp. 1025 (N.D.

Ohio 1978). As I explained in *Sager v. City of Woodland Park,* 543 F.Supp. 282, (D.Colo.1982), "[t]o state a claim under 42 U.S.C. § 1985(3), a complaint must allege five elements:

(1) a conspiracy; (2) motivated by "racial or perhaps otherwise class-based individious discriminatory animus"; (3) "for the purpose of depriving either directly, or indirectly, any person or class of persons of equal protection of the laws, or equal privileges and immunities under the laws"; (4) that the conspirator committed some action in furtherance of the conspiracy; and (5) that the plaintiff was either "injured in his person or property" or was "deprived of having and exercising any right or privilege of a citizen of the United States." " *Id.* at 291.

*See Griffin v. Breckenridge,* 403 U.S. 88, 102–103, 91 S.Ct. 1790, 1798–1799, 29 L.Ed.2d 338 (1971). Garcia neither alleges a conspiracy nor discrimination of any kind, let alone invidious discrimination.

 The complaint also fails to state a claim under § 1986. It is well established that if a plaintiff is unable to state a claim under § 1985, then a derivative claim under § 1986 must fail as well. *Mollnow v. Carlton,* 716 F.2d 627 (9th Cir.1983), *cert. denied* ── U.S. ──, 104 S.Ct. 1595, 80 L.Ed.2d 126; *Buchanan v. Sowa,* 592 F.Supp. 1009 (D.Ohio 1984). Finally, I reject plaintiff's reliance upon 42 U.S.C. § 1988 as an independent basis for maintaining this civil rights action. That section is only intended to complement those Acts which create federal causes of action. Section 1988 neither creates an "act of Congress providing for the protection of civil rights within the meaning of 28 U.S.C. § 1343", *Moor v. Alameda County,* 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973), nor grants a district court subject matter jurisdiction. *Barr v. United States,* 478 F.2d 1152 (10th Cir.1973), *cert. denied* 414 U.S. 910, 94 S.Ct. 233, 38 L.Ed.2d 148. Accordingly, all claims purportedly filed by plaintiff pursuant to 42 U.S.C. §§ 1981, 1985, 1986 and 1988 are

hereby dismissed for failure to state a claim upon which relief can be granted.

 This leaves only 42 U.S.C. § 1983, which provides that

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ..., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity or other proper proceeding for redress....

In order to establish a claim under 42 U.S.C. § 1983, plaintiff must show that some person deprived him of a federal right while acting under color of state law. *Gomez v. Toledo*, 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980). Because § 1983 creates no substantive rights, where a complaint fails to allege a deprivation or violation of a protected right, the cause of action must be dismissed.

 Here Garcia maintains that Scanlin violated his constitutional rights by concealing Wyckoff's acts, intimidating plaintiff, and punishing plaintiff. I am not persuaded that any of these charges rise to the level of a violation of any of plaintiff's constitutional rights. Plaintiff alleges legal conclusions without stating any factual bases or grounds for his assertions. Consequently, I dismiss the first cause of action as it relates to Scanlin. Insomuch as this is the only claim for relief against Scanlin, he is dismissed from the lawsuit.

The only civil rights claim over which this court has jurisdiction is plaintiff's allegation that Wyckoff violated Garcia's civil rights under § 1983. Plaintiff urges that Wyckoff deprived him of his "right to be free from excessive force in his apprehension—presumably a right secured by the fourth and fourteenth amendments." *City of Oklahoma City v. Tuttle*, —— U.S. ——, ——, 105 S.Ct. 2427, 2432, 85 L.Ed.2d 791 (1985). With this confusion clarified, I turn now to the pending motions.

## II

**A.** *Defendant City and County of Denver's motion for judgment on the pleadings.*

The City and County of Denver seeks dismissal because plaintiff failed to allege federal jurisdiction over it. The only claim for relief asserted against it relates to negligent training of police officers; and plaintiff never established the jurisdictional grounds for maintaining such a cause of action against the city. Plaintiff insists that he properly alleged federal jurisdiction over the city in connection with the civil rights claims.

 I agree with the City and County of Denver. The only reasonable construction of this inartfully drafted complaint is that the civil rights claims only involve defendants Wyckoff and Scanlin. (*See* first cause of action). If plaintiff intended to assert a § 1983 claim for negligent training of police officers, *see Tuttle, supra*, then he should have done so expressly. Notice pleading requires something more than shadow-like images of claims for relief. Plaintiff had an affirmative obligation to put the city on notice that he is asserting a § 1983 action against it. He failed to do so.

 I further find that plaintiff fails to allege proper jurisdiction over the pendent state claims against the city. The complaint states that "jurisdiction is found in 28 U.S.C. § 1331 and 1343, 42 U.S.C. § 1988, and in the United States Constitution. There are also pendent state causes of action." This is the only reference to jurisdiction in the complaint. I find that it is woefully inadequate. Plaintiff fails to identify not only the basis for asserting pendent jurisdiction, but more importantly, the specific claims subject to this form of jurisdiction. A casual reference to the existence of pendent state causes of action is insufficient to establish jurisdiction over specific causes of action. I therefore grant the City and County of Denver's motion

and dismiss plaintiff's negligence claims against the city.

Defendants Dill and Coogan are identically situated to the City and County of Denver with respect to this jurisdictional shortcoming. Specifically, the only claims for relief asserted against them are pendent state claims for relief for negligence. This court does not have jurisdiction over those claims. I dismiss plaintiff's negligence claims against Dill and Coogan, *sua sponte,* for the same reasons. Dill and Coogan are not named as parties in the crossclaims and are therefore dismissed from the lawsuit.

■■■ Even if I were to ignore numerous lacunae in the pleadings, I would still not allow the case to continue against these defendants under the doctrine of pendent jurisdiction. The doctrine gives this court the power to entertain pendent claims when the state and federal claims "derive from a common nucleus of operative fact." *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). However, the power need not be exercised in every case as the doctrine is one of discretion not of right. *Gibbs, supra* at 726, 86 S.Ct. at 1139 (1966). Here, the "common nucleus of operative fact" connecting training with actual performance is at best tangential. I exercise my discretion and deny pendent jurisdiction. Accordingly, I hold that plaintiff's negligence claims against defendants City and County of Denver, Dill and Coogan should be dismissed for lack of subject matter jurisdiction under the doctrine of pendent jurisdiction.

■■ Finally, even if there were in fact a § 1983 claim for negligent training of officers against the city, it would have to be dismissed for failure to state a claim upon which relief can be granted. In *Tuttle, supra* the Supreme Court defined the contours of § 1983 actions against municipalities and thereby reaffirmed the *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) requirement that municipal liability under § 1983 can only be imposed for injuries inflicted pursuant to government "policy or custom." The complaint is void of any allegation that government policy or custom caused these alleged constitutional violations and consequently fails to state such a § 1983 claim against the City and County of Denver.

**B.** *Plaintiff's motion for partial summary judgment.*

Garcia moves for partial summary judgment arguing that there are no genuine issues of material fact surrounding two issues: whether Wyckoff used excessive force in shooting plaintiff and whether good-faith immunity is available to Wyckoff as an affirmative defense. Defendants maintain that the question of excessive force is a factual question that cannot be determined as a matter of law and is therefore inappropriate for summary judgment. Defendants also contend that Wyckoff is entitled to raise a qualified immunity defense.

The first question raised is whether Wyckoff's excessive use of force was unreasonable and illegal as a matter of law. Plaintiff suggests that the United States Supreme Court recently decided this issue in *Tennessee v. Garner,* —— U.S. ——, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985), when it held that

[w]here the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so. *Id.* at ——, 105 S.Ct. at 1711.

In *Garner,* the majority of the Supreme Court declared that "a police officer may not seize an unarmed, non-dangerous suspect by shooting him dead," and found the Tennessee statute unconstitutional "insofar as it authorizes the use of deadly force against such fleeing suspects." *Id.* at ——, 105 S.Ct. at 1700. While I agree with defendants' assertion that the Court's specific ruling is limited to deadly force that is intended and in fact produces death, I disagree with defendants' position that *Gar-*

*ner* is not instructive. The Court's analysis is relevant to the instant case notwithstanding the fact that Garcia was only injured. *See also Acoff v. Abston,* 762 F.2d 1543 (11th Cir.1985) (where the court applied *Garner* retroactively).

The Supreme Court approached the propriety of using deadly force through the fourth amendment. It began by characterizing the use of force by police as a seizure subject to the reasonableness requirements of the fourth amendment. The *Garner* majority then subjected the seizure or intrusion to a careful balancing test, weighing the "nature and quality of the intrusion on the individual's fourth amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Id.* at —— U.S. at ——, 105 S.Ct. at 1699. In the context of killing a fleeing suspect, the Court balanced the suspect's fundamental interest in life against the governmental interests in effective law enforcement and concluded that the use of deadly force is not a "sufficiently productive means of accomplishing them [these goals] to justify the killing of nonviolent suspects." *Id.* at ——, 105 S.Ct. at 1700.

■ Because Garcia was only injured, it cannot be said that *Garner* establishes as a matter of law that Wyckoff's use of force was unreasonable. Nevertheless, Garcia was the subject of a seizure, and I read *Garner* as requiring that the determination of whether Wyckoff's use of force violated Garcia's fourth amendment rights be based upon the foregoing balancing test. This is significant because it renders this critical issue a question of law for the court to decide. *See e.g., United States v. Burrell,* 720 F.2d 1488 (10th Cir.1983) (where the court held that determining whether outrageous police conduct violated due process is a question of law); *United States v. Syzcher,* 585 F.2d 443 (10th Cir.1978). This inquiry is further simplified by the Supreme Court's ruling in *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), repudiating the subjective prong of qualified immunity in order to make it easier to resolve insubstantial claims by summary judgment. Following *Harlow,* I must "apply an objective standard of reasonableness in judging the allegations of official misconduct." *Buchanan, supra* at 1016.

■ In balancing Garcia's interest in being free from intrusive seizures that jeopardize his health against the government's interest in effective law enforcement, I am persuaded that under the totality of the circumstances, Wyckoff's conduct was justified and reasonable. In contrast to *Garner,* the force used did not frustrate society's interest in judicial determination and guilt. Nor did it abridge Garcia's fundamental interest in life, a critical factor in the Court's decision. Moreover, the facts and circumstances preceding Wyckoff's use of force were substantially different. Garcia had already been lawfully arrested and placed in custody. He then deceived Wyckoff into loosening the handcuffs so that he could escape en route to police headquarters. Despite repeated warnings to stop, plaintiff continued to elude Wyckoff until he was shot. Based upon these important differences, I hold that Wyckoff's use of force was reasonable and justified and did not violate plaintiff's fourth amendment rights. Finally, I conclude that no other constitutional rights were violated by Wyckoff's conduct. *See Garner, supra* at —— U.S. at ——, 105 S.Ct. at 1711; *Baker v. McCollan,* 443 U.S. 137, 144, 99 S.Ct. 2689, 2694, 61 L.Ed.2d 433 (1979) (due process); *Bell v. Wolfish,* 441 U.S. 520, 538, 99 S.Ct. 1861, 1873, 60 L.Ed.2d 447 (1979) (eighth amendment). I therefore deny plaintiff's motion for partial summary judgment and dismiss the last remaining claim for relief against Wyckoff. This, in turn, disposes of the entire lawsuit.

Having already dismissed the § 1983 action against Wyckoff, the second part of plaintiff's motion regarding qualified or good-faith immunity is rendered moot.

IT IS THEREFORE ORDERED THAT:

1. Defendant City and County of Denver's motion for judgment on the pleadings is granted.

2. Plaintiff's motion for summary judgment is denied.

3. The entire action is dismissed with prejudice.

4. Defendants shall have judgment for their costs herein.